Catherine L. Brabson (#6500)
Mark E. Kittrell (#9500)
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
Telephone:  (801) 535-7788
Facsimile:  (801) 535-7640
Catherine.Brabson@slcgov.com
Mark.Kittrell@slcgov.com

*Attorneys for Defendants Salt Lake City and Officer Clinton Fox*

---

## IN THE UNITED STATES DISTRICT COURT
## STATE OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| ESTATE OF PATRICK HARMON SR.; PATRICK HARMON II, as Personal Representative of the Estate of Patrick Harmon Sr., and heir of Patrick Harmon Sr., TASHA SMITH, as heir of Patrick Harmons, Sr., | **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** |
| Plaintiffs, | |
| vs. | |
| SALT LAKE CITY, a municipality; and OFFICER CLINTON FOX, in his individual capacity, | Case No. 2:19-cv-00553 |
| Defendants. | Judge Robert J. Shelby |

# TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF RELIEF SOUGHT ................................................. 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................................................ 9

    I.      RULE 12(B)(6) STANDARD OF REVIEW ........................................................ 9

    II.     BECAUSE THE USE OF DEADLY FORCE WAS OBJECTIVELY
            REASONABLE, OFFICER FOX IS ENTITLED TO QUALIFIED
            IMMUNITY ON PLAINTIFFS' FOURTH AMENDMENT CLAIM
            AS A MATTER OF LAW ................................................................................ 10

          A.     The Standard for Qualified Immunity on a Rule 12(b)(6) Motion
                 to Dismiss ................................................................................... 10

          B.     Based on the Indisputable Bodycam Video Evidence, Plaintiffs'
                 Allegations are Not Plausible ...................................................... 11

          C.     The Use of Deadly Force by Officer Fox was Objectively
                 Reasonable ................................................................................... 14

                 i.     The Fourth Amendment reasonableness standard ........................ 14

                 ii.    Under the totality of the circumstances, the use of deadly
                      force by Officer Fox was objectively reasonable ......................... 15

          D.     No Clearly Established Law Shows the Use of Deadly Force in
                 these Circumstances Violated Harmon's Fourth Amendment
                 Rights ........................................................................................... 18

    III.    PLAINTIFFS FAIL TO STATE AN EQUAL PROTECTION
            VIOLATION ................................................................................................. 20

    IV.    PLAINTIFFS CANNOT STATE A MUNICIPAL LIABILITY CLAIM ........... 20

    V.     PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED
            WITHOUT PREJUDICE ............................................................................... 21

    VI.    ALTERNATIVELY, PLAINTIFFS FAIL TO STATE A CLAIM FOR
            RELIEF UNDER STATE LAW .................................................................... 21

A.    Plaintiffs' Wrongful Death Claim is Barred by the GIAU ...................... 21

B.    Plaintiffs Cannot State A Claim for Violation of the Unnecessary
      Rigor Clause of the Utah Constitution...................................................... 23

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Albers v. Bd. of Cty. Comm'rs.*, 771 F.3d 697, 700 (10th Cir. 2014) ........................................... 9

*Ashcroft v. al-Kidd*, 563 U.S. at 741 .......................................................................................... 19

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................ 9, 10, 20, 22

*Barneck v. Utah Dep't of Transp.*, 2015 UT 50 ............................................................................ 22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 9

*Borneman v. Rozier*, 398 F. App'x 415 (10th Cir. 2010) .............................................................. 12

*Bryner v. Utah*, 429 F. App'x 739 (10th Cir. 2011) ...................................................................... 12

*Chief v. West Valley City*, No. 2:11-CV-643 TS, 2013 WL 6146061, at *12
    (D. Utah Nov. 21, 2013) ......................................................................................................... 22

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .................................................... 20

*City & Cnty. of San Francisco v. Sheehan*, ___U.S. ___, 135 S. Ct. 1765 (2015) ........................ 10

*Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d
    1194 (10th Cir. 2011) .......................................................................................................... 3, 12

*Dexter v. Bosko*, 2008 UT 29 ....................................................................................................... 23

*Estate of Larsen v. Murr*, 511 F.3d 1255 (10th Cir. 2009) ................................... 15, 16, 17, 18, 19

*Farrell-Cooper Min. Co. v. United States DOI*, 728 F.3d 1229 (10th Cir. 2013) ........................ 12

*Gallagher v. Shelton*, 587 F.3d 1063 (10th Cir. 2009) ................................................................... 9

*Garcia-Rodriguez v. Gomm*, 169 F. Supp. 3d 1221 (D. Utah 2016) ............................................ 12

*Graham v. Connor*, 490 U.S. 386 (1989) ........................................................................... 14, 15, 17

*Hinton v. City of Elwood*, 997 F.2d 774 (10th Cir. 1993) ............................................................. 20

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) ................................................................................... 19

*Mecham v. Frazier*, 500 F.3d 1200 (10th Cir.2007) ...................................................................... 15

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .................................................................... 20

*Needham v. Fannie Mae*, 854 F. Supp. 2d 1145 (D. Utah 2012) ................................................... 3

*Pearson v. Callahan*, 555 U.S. 223 (2009) ............................................................................ 11, 18

*Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262 (10th Cir.1989) ............................................... 20

*Quinn v. Young*, 780 F.3d 998 (10th Cir. 2015) ........................................................................... 11

*Requena v. Roberts*, 893 F.3d 1195 (10th Cir. 2018) .................................................................... 20

*Roska ex rel. Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003) ............................................... 15

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................................................................... 19

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................................................................... 12

*Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151 (10th Cir. 1998) ...................... 21

*Smith v. United States*, 561 F.3d 1090 (10th Cir.2009) ............................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322 .................................................... 12

*Tennessee v. Garner*, 471 U.S. 1 (1985) ..................................................................................... 15

*Thomas v. Kaven*, 765 F.3d 1183 (10th Cir. 2014) ....................................................................... 11

*Thomson v. Salt Lake Cty.*, 584 F.3d 1304 (10th Cir. 2009) ....................................................... 22

*Tiede v. Utah State Dep't of Corr.*, 915 P.2d 500 (Utah 1996) ................................................... 22

**Other Authorities**

42 U.S.C. § 1983 ................................................................................................ 2, 10
Federal Rules of Civil Procedure Rule 12(b)(6) ............................................... 1, 9, 20
Utah Code § 63G-7-101 .......................................................................................... 21
Utah Code § 63G-7-201 .......................................................................................... 21
Utah Code § 63G-7-202(3)(a) ................................................................................. 21
Utah Code § 63G-7-301 .......................................................................................... 22
Utah Code § 76-5-103 ............................................................................................. 15
Utah Code § 78B-3-106 ........................................................................................... 21
Utah Constitution. Article 1, Section IX of the Utah Constitution ............................. 2

Pursuant to Rule 12(b)(6), Defendants Salt Lake City Corporation (the "City") and Officer Clinton Fox ("Officer Fox") move to dismiss all of Plaintiffs' claims on the basis of qualified immunity and on the grounds Plaintiffs fail to state a claim as a matter of law.

## INTRODUCTION AND STATEMENT OF RELIEF SOUGHT

This case arises from the shooting death of Patrick Harmon ("Mr. Harmon") on August 13, 2017 in Salt Lake City. Just after 10:00 p.m., Salt Lake City police officer Chris Smith observed Mr. Harmon riding his bicycle travelling south along the east side of State Street in the vicinity of 600 South. Mr. Harmon turned and rode across State Street from east to west across all six lanes and a median with no hand signals and no red taillight on his bicycle as required by law. Officer Smith stopped Mr. Harmon to discuss bicycle safety and asked him for his name. After Mr. Harmon gave several different names, and Officer Smith could not identify him, Officer Smith called for backup. Mr. Harmon mentioned an outstanding warrant, and Officer Smith confirmed that Mr. Harmon had an outstanding felony warrant for his arrest. Officer Scott Robinson and Defendant Officer Clinton Fox responded as backup officers. Officer Smith informed Mr. Harmon about the warrant and that he was under arrest. As Officer Smith and Officer Robinson were in the process of taking Mr. Harmon into custody, Mr. Harmon initially was compliant. But then Mr. Harmon suddenly broke away from the officers and ran – first heading north along the sidewalk and then turning south to run past the officers while evading their attempts to grab him.

As Mr. Harmon ran, all three officers heard him say that he was going to "cut" or "stab" them.[1] Then, Mr. Harmon stopped running and turned to face Officer Fox with his right arm and hand raised with an open knife in his right hand. At this point, Mr. Harmon was on the sidewalk only a few feet away from Officer Fox, and his body (including his raised right arm/hand) appeared to be moving towards Officer Fox. In fear of imminent harm, Officer Fox used his firearm to shoot Mr. Harmon who fell to the ground. As Officer Fox provided cover with his firearm, Officer Robinson approached Mr. Harmon and placed him in handcuffs. Medical personnel were called to the scene. Mr. Harmon later died from the gunshot wounds.

Plaintiffs bring this action under 42 U.S.C. § 1983 alleging that Officer Fox used excessive force in violation of the Fourth Amendment when he shot Mr. Harmon. Plaintiffs also assert Officer Fox engaged in racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs allege that the City has municipal liability for these alleged constitutional violations. Finally, Plaintiffs assert claims under state law for wrongful death and violation of the unnecessary rigor clause in Article 1, Section IX of the Utah Constitution.

The bodycam videos of the three officers, when considered together, provide the indisputable facts underlying this incident. Based on these indisputable facts, Defendants move to dismiss Plaintiffs' Fourth Amendment claims against Officer Fox on the basis of qualified immunity. Defendants also move to dismiss Plaintiffs' equal protection claims for failure to plausibly state a claim as a matter of law. As Plaintiffs cannot state a constitutional violation

---

[1]     Plaintiffs' Complaint only references the report of Officer Fox regarding Mr. Harmon's statement. Pls.' Complaint, ECF No. 6-1, at §§ 93, 105.

2

against Officer Fox, Plaintiffs' claims against the City likewise fail. Finally, Plaintiffs' state law claims should be dismissed without prejudice for lack of subject matter jurisdiction. Alternatively, Plaintiffs claims for wrongful death are barred by the Governmental Immunity Act of Utah, and Plaintiffs fail to state a claim for relief under the unnecessary rigor clause of the Utah Constitution.

## STATEMENT OF FACTS[2]

1.      Just after 10:00 p.m., Salt Lake City police officer Chris Smith ("Officer Smith") observed Mr. Harmon riding his bicycle travelling south along the east side of State Street in the vicinity of 600 South. Mr. Harmon turned and rode across State Street from east to west across all six lanes and a median with no hand signals and no red taillight on his bicycle as required by law. Officer Smith stopped Mr. Harmon to discuss bicycle safety and asked him for his name. Pls.' Compl., ECF No. 6-1, at ¶¶ 19-21.

2.      After Mr. Harmon gave several different names, with Officer Smith returning twice to his patrol car to run a warrant check, Officer Smith was unable to make a positive ID. Pls.' Compl., ECF No. 6-1, at ¶¶ 22-24; Officer Smith bodycam video, filed conventionally as Exhibit A, at 0:00 to 4:40.[3]

---

[2]      The facts are taken from Plaintiffs' Complaint and the indisputable bodycam video evidence submitted herewith. Defendants accept the facts contained in this section as true solely for the purpose of this motion.

[3]      Plaintiffs reference and include excerpts from the bodycam videos of Officer Smith, Officer Fox and Officer Robinson throughout their Complaint but did not include copies of the videos as exhibits. But in considering a motion to dismiss, the court should consider not only the complaint but the attached exhibits or material referenced in the complaint. *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011); *Tellabs, Inc. v. Makkor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Needham v. Fannie Mae*, 854 F. Supp. 2d 1145, 1148 (D. Utah 2012) ("If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive

3.      Unable to identify Mr. Harmon based on the names he had given for identification, Officer Smith again asked Mr. Harmon for his correct name, at which point Mr. Harmon gave his correct name of "Patrick Harmon." Officer Smith bodycam video, at 4:40 – 4:55.

4.      After Mr. Harmon provided his correct name, Mr. Harmon volunteered to Officer Smith that he likely had an outstanding felony warrant. Pls.' Compl., ECF No. 6-1, at ¶ 23; Officer Smith bodycam video, at 4:50 – 6:08.

5.      While Officer Smith returned to his patrol car again to run another warrant check, Mr. Harmon stood calmly next to his bicycle and waited for Officer Smith to return. Pls.' Compl., ECF No. 6-1, at ¶ 24; Officer Smith bodycam video, at 6:08 – 6:50.

6.      As Officer Smith ran the warrant check for "Patrick Harmon," Officer Scott Robinson ("Officer Robinson") and Defendant Officer Clinton Fox ("Officer Fox") responded to the scene as backup officers, with Officer Fox making contact with Mr. Harmon. Pls.' Compl., ECF No. 6-1, at ¶ 25; Officer Smith bodycam video, at 6:50 to 7:15; Officer Fox bodycam video, filed conventionally as Exhibit B, at 0:00 to 0:35; Officer Robinson bodycam video, filed conventionally as Exhibit C, at 0:00 to 0:55.

7.      Officer Smith located an outstanding felony warrant for Mr. Harmon. Pls.' Compl., ECF No. 6-1, at ¶ 26; Officer Smith bodycam video, at 6:50 to 7:15.

---

document upon which the plaintiff relied"). For this reason, Defendants have submitted a *complete* copy of all of the bodycam videos, as well as relevant still frame images and a compiled version of the three bodycam videos synchronized by time for the Court's review as part of this motion. For each of the bodycam videos, there is no accompanying audio recording during the first 30 seconds of a bodycam video because at the time the equipment is activated, the audio begins recording but the video records (without audio) for 30 seconds prior to the officer's activation, and is stored once the camera is activated.

8.      Officer Smith informed Mr. Harmon about the warrant and that he was under arrest. Pls.' Compl., ECF No. 6-1, at ¶ 28; Officer Smith bodycam video, at 7:40 to 7:55.

9.      Officer Smith asked Mr. Harmon to take off his backpack, and Mr. Harmon complied. Pls.' Compl., ECF No. 6-1, at ¶ 28; Officer Smith bodycam video, at 7:55 to 8:10; Combined bodycam video, filed conventionally as Exhibit D, at 00:00 to 00:12.

10.     Officer Smith and Officer Robinson moved into position behind Mr. Harmon to place him in handcuffs and Officer Fox stood in front of Mr. Harmon. Pls.' Compl., ECF No. 6-1, at ¶ 25; Officer Smith bodycam video, at 7:55 to 8:15; Officer Fox bodycam video at 0:40 to 1:01; Officer Robinson bodycam video at 0:55 to 1:10; Combined bodycam video, at 00:00 to 00:15.

11.     Officer Smith asked Mr. Harmon to place his hands behind his back, and Mr. Harmon complied. Pls.' Compl., ECF No. 6-1, at ¶ 29; Officer Smith bodycam video, at 8:10 to 8:13; Officer Fox bodycam video at 0:55 to 1:01; Officer Robinson bodycam video at 1:10 to 1:15; Combined bodycam video at 00:12 to 00:15.

12.     As Officers Smith and Robinson were starting the process of placing Mr. Harmon's hands into handcuffs, Mr. Harmon suddenly broke away from the officers and ran – first heading north along the sidewalk and then turning south to run past the officers while evading their attempts to grab him. Officer Smith bodycam video, at 8:13 to 8:20; Officer Fox bodycam video at 1:01 to 1:07; Officer Robinson bodycam video at 1:15 to 1:22; Combined bodycam video at 00:15 to 00:22.

13.     Officer Fox pursued Mr. Harmon as he ran south along the sidewalk. Officer
Smith bodycam video, at 8:13 to 8:20; Officer Fox bodycam video at to 1:01 to 1:07; Officer
Robinson bodycam video at 1:19 to 1:22; Combined bodycam video at 00:15 to 00:22.

14.     As shown in frame by frame images from the bodycam video, as Mr. Harmon was
moving south on the sidewalk, Mr. Harmon's hands appear to meet together directly in front of
his body at just above his waist level. Officer Smith Frame by Frame Excerpts, filed
conventionally as Exhibit E, at 08_18_03 to 08_18_07; Officer Fox Frame by Frame Excerpts,
filed conventionally as Exhibit F, at 01_05_15 to 01_07_17, and 01_06_00.

15.     After running only a few feet, Mr. Harmon stopped running and turned to face the
officers. Officer Smith bodycam video, at 8:18 to 8:20; Officer Fox bodycam video at 1:05 to
1:07; Officer Robinson bodycam video at 1:19 to 1:21; Combined bodycam video at 00:20-
00:22; Officer Smith Frame by Frame Excerpts at 08_18_28 to 08_19_05; Officer Fox Frame by
Frame Excerpts at 01_05_15 to 01_06_29.

16.     As shown in frame by frame images, at this moment in the encounter both of Mr.
Harmon's feet were turned in the direction of Officer Fox. Officer Smith Frame by Frame
Excerpts at 08_18_28 to 08_19_05.

17.     As shown in frame by frame images, Mr. Harmon's head and face were turned
towards Officer Fox and his right arm and hand were raised above his shoulder and bent at the
elbow, in what is consistent with a threatening or stabbing stance towards Officer Fox. Officer
Smith Frame by Frame Excerpts at 08_18_28 to 08_19_05; Officer Fox Frame by Frame
Excerpts at 01_05_11 to 01_06_20.

18.     Officer Fox saw a knife in Mr. Harmon's raised right hand. Pls.' Compl., ECF
No. 6-1, at ¶¶ 92-93, 104.

19.     Mr. Harmon was a few feet away from Officer Fox on the sidewalk,
approximately 5 and no more than 10 feet separated them. Still Frames (3) from Combined
bodycam video, attached as Exhibit G; Combined bodycam video at 00:20 – 00:23; Officer
Smith Frame by Frame Excerpts at 08_18_28 to 08_19_10; Officer Fox Frame by Frame
Excerpts at 01_05_11 to 01_06_20.

20.     Fearing for his safety and the safety of Officers Smith and Robinson, Officer Fox
used his firearm to shoot Mr. Harmon. Pls.' Compl., ECF No. 6-1 at ¶ 52; Officer Smith
bodycam video, at 8:17 to 8:19; Officer Fox bodycam video at 1:05 to 1:07; Combined bodycam
video at 00:21 – 00:23; Officer Smith Frame by Frame Excerpts at 08_19_04 to 08_19_11;
Officer Fox Frame by Frame Excerpts at 01_06_20 to 01_07_05.

21.     When Mr. Harmon was shot, his body spun around to the right and he fell to the
ground with his right arm still outstretched, such that his right hand landed in the grass to the
west of the sidewalk. Officer Fox bodycam video at 1:07 to 1:10; Officer Robinson bodycam
video at 1:22 to 1:37; Combined bodycam video at 00:22 – 00:25; Officer Fox Frame by Frame
Excerpts at 01_06_20 to 01_07_16.

22.     As Officer Fox remained in position with his weapon trained on Mr. Harmon,
Officer Robinson approached Mr. Harmon, and Officer Fox indicated to Officer Robinson "I got
him" to let him know he was covered. Officer Smith bodycam video, at 8:20 to 8:30; Officer Fox
bodycam video at 1:09 to 1:16; Officer Robinson bodycam video at 1:22 to 1:32; Combined
bodycam video at 00:24 – 00:31.

23.     As he approached Mr. Harmon, Officer Robinson moved Mr. Harmon's right arm from its outstretched position to a position alongside his body in order to secure Mr. Harmon's wrists in handcuffs per policy. Officer Smith bodycam video, at 8:20 to 8:34; Officer Fox bodycam video at 1:09 to 1:22; Officer Robinson bodycam video at 1:22 to 1:37; Combined bodycam video at 00:24 – 00:37.

24.     Still photos from Officer Robinson's bodycam video as he approached Mr. Harmon clearly show an open knife, approximately 8 inches long, laying in the grass at most a few inches from where Mr. Harmon's right hand landed as he fell. Officer Robinson Frame by Frame Excerpts, filed conventionally as Exhibit H; see also, Combined bodycam video at 00:35 – 00:36.

25.     Photos of the scene taken thereafter include an open knife in the location shown in Officer Robinson's bodycam video. Pls.' Compl., ECF No. 6-1 at ¶¶ 110 – 112;[4] Scene photos, attached as Exhibit I.

26.     Medical personnel were called to the scene. Mr. Harmon later died from the gunshot wounds. Pls.' Compl., ECF No. 6-1 at ¶86.

---

[4]     Plaintiffs allege that SLCPD "quickly disposed" of this knife before conducting any testing. Pls.' Compl. ECF No. 6-1 at ¶ 117. However, this allegation is false. SLCPD maintains current possession of the knife following completion of the independent investigation conducted by Unified Police Department. Obviously, Defendants would willingly present the knife to Plaintiffs and the Court for inspection at any time. Nevertheless, this allegation does not material alter the analysis of objective reasonableness for purposes of this motion.

## ARGUMENT

### I.     RULE 12(B)(6) STANDARD OF REVIEW.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."[5] When considering a motion to dismiss, the Court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.[6] Nevertheless, a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face."[7] "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[8] Further, a complaint must allege "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and it must "raise a right to relief above the speculative level."[9]

In determining the adequacy of a complaint in the context of a motion under Rule 12(b)(6), the court should engage in a two-part process. First, the court should begin by identifying allegations that, because they "are no more than conclusions, are not entitled to the assumption of truth."[10] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[11] Thus, "[t]hreadbare recitals of the elements of a

---

5    FED. R. CIV. P. 12(b)(6).

6    See Albers v. Bd. of Cty. Comm'rs., 771 F.3d 697, 700 (10th Cir. 2014).

7    Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

8    Gallagher v. Shelton, 587 F.3d 1063, 1068 (10th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

9    Twombly, 550 U.S. at 555.

10   Iqbal, 556 U.S. at 679.

11   Id.

cause of action, supported by mere conclusory statements, do not suffice."[12] Next, after excluding conclusory assertions, the court assumes the veracity of well-pleaded allegations and determines whether they plausibly give rise to an entitlement to relief.[13] Under this standard, Plaintiffs fail to state plausible claims against the City or Officer Fox for violation of the Equal Protection Clause of the Fourteenth Amendment. In addition, Plaintiffs' claims for wrongful death are barred by the Governmental Immunity Act of Utah. These claims should be dismissed with prejudice.

## II.    BECAUSE THE USE OF DEADLY FORCE WAS OBJECTIVELY REASONABLE, OFFICER FOX IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' FOURTH AMENDMENT CLAIM AS A MATTER OF LAW.

Plaintiffs assert that Officer Fox violated Mr. Harmon's Fourth Amendment right to be free from excessive force. Officer Fox asserts the defense of qualified immunity. Because the indisputable video evidence demonstrates that Mr. Harmon charged at Officer Fox in close proximity with a raised knife, the use of deadly force was objectively reasonable under the circumstances and Plaintiffs cannot establish a Fourth Amendment violation. For that reason, Officer Fox is entitled to qualified immunity as a matter of law.

### A.    The Standard for Qualified Immunity on a Rule 12(b)(6) Motion to Dismiss.

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[14] To overcome a qualified immunity defense, Plaintiffs bear the burden to demonstrate

---

12      *Id.* at 678.
13      *Id.*
14      *City & Cnty. of San Francisco v. Sheehan*, ___U.S. ___, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted).

10

on the facts alleged: "(1) that the official violated a statutory or constitutional right; and (2) that the right was 'clearly established' at the time of the challenged conduct."[15] Because qualified immunity is immunity from suit rather than a mere defense to liability, the Supreme Court has repeatedly stressed the importance of resolving immunity questions "at the earliest possible stage in litigation."[16] "[T]he driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery."[17] "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity."[18] On a motion to dismiss, however, a defendant is subject "to a more challenging standard of review than would apply on summary judgment."[19] It is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness.[20] Here, the allegations must be considered in light of the referenced bodycam videos, which are indisputable evidence of the events that occurred.

**B.      Based on the Indisputable Bodycam Video Evidence, Plaintiffs' Allegations are Not Plausible.**

Plaintiffs' allegations that Mr. Harmon was unarmed and merely fleeing arrest, and that Mr. Harmon posed no threat when he was shot by Officer Fox are contradicted by the officers' bodycam videos referenced at length in Plaintiffs' Complaint. In considering a motion to

---

15    *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (recognizing the court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case").
16    *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009).
17    *Id.* at 231 (citation simplified).
18    *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).
19    *Id.*
20    *Id.* (citation simplified).

11

dismiss, the court should consider not only the complaint, but the attached exhibits,[21] documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.[22] "[F]actual allegations that contradict a properly considered document are not well-pleaded facts that the court must accept as true."[23] With the evolution of body camera footage in police encounters, a court cannot assume the truth concerning the facts alleged by plaintiffs but rather must view the facts in light of the indisputable video evidence.[24]  If the record contains "videotape capturing the events in question" that blatantly contradict plaintiff's version of events, a court cannot adopt such "visible fiction" and must "view[] the facts in the light depicted by the videotape."[25]

Here, Plaintiffs' allegations are blatantly contradicted by the evidence from the officers' bodycam videos. First and foremost, frame by frame images from Officer Robinson's bodycam video show an open knife, approximately 8 inches long, laying in the grass at most a few inches from where Mr. Harmon's right hand landed as he fell.[26] This same knife is also shown in photos taken later of the scene.[27] In addition, the video evidence indisputably shows that Mr. Harmon's

---

[21]    *Commonwealth,* 680 F.3d at 1201; *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.2009).

[22]    *Tellabs,* 551 U.S. at 322.

[23]    *Farrell-Cooper Min. Co. v. United States DOI*, 728 F.3d 1229, 1237, n. 6 (10th Cir. 2013) (citation simplified); *see also Garcia-Rodriguez v. Gomm*, 169 F. Supp. 3d 1221, 1230 (D. Utah 2016) (finding plaintiffs' allegations that were contradicted by warrant documents were not entitled to the assumption of truth).

[24]    *Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

[25]    *Id.* at 381; *see also Borneman v. Rozier*, 398 F. App'x 415, 418 (10th Cir. 2010) ("But where, as here, the record contains videotapes capturing the events in question, the court 'view[s] the facts in the light depicted by the videotape.'"); *Bryner v. Utah,* 429 F. App'x 739, 746 (10th Cir. 2011) (same).

[26]    Officer Robinson Frame by Frame Excerpts; Combined bodycam video, at 00:35 – 00:36.

[27]    Scene photos, Ex. I.

hands appeared to meet together in front of his body just above waist level,[28] Mr. Harmon's feet were pointing in the direction of Officer Fox,[29] and his head and fact were turned towards Officer Fox.[30] Multiple bodycam images confirm that Mr. Harmon's right arm and hand were raised above his shoulder and bent at the elbow, and moving in a way that is consistent with holding a knife in a threatening or "charging" manner.[31] Because the clear video evidence shows the knife laying just inches from where Mr. Harmon's right hand landed as he fell, no reasonable jury could find that Mr. Harmon did not have a knife and was not charging at Officer Fox with the knife in his raised right hand. Thus, Plaintiffs' version of events, in which they attempt to create the impression that Mr. Harmon "was unarmed and fleeing," is utterly discredited.

Moreover, it is hardly remarkable that the bodycam videos failed to capture the audio of Mr. Harmon making the threatening "cut or stab" statements reported by all three responding officers. Even when the officers' cameras were in very close proximity to Mr. Harmon, Mr. Harmon's voice is barely audible. And as Harmon ran and the officers scrambled to grab him, the audio background noise is so pervasive that it effectively drowns out the capture of human speech for those 6 or 7 seconds. It cannot legitimately be contended that the recording captured all of the audio of the encounter.

---

[28]     Officer Smith Frame by Frame Excerpts, at 08_18_03 to 08_18_07; Officer Fox Frame by Frame Excerpts, at 01_05_15 to 01_07_17, and 01_06_00; Combined bodycam video, at 0:20 to 0:22.
[29]     Officer Smith Frame by Frame Excerpts at 08_18_28 to 08_19_05; Combined bodycam video, at 0:20 to 0:22.
[30]     Officer Smith Frame by Frame Excerpts at 08_18_28 to 08_19_05; Officer Fox Frame by Frame Excerpts at 01_05_11 to 01_06_20; Combined bodycam video, at 0:20 to 0:23.
[31]     Officer Smith Frame by Frame Excerpts at 08_18_28 to 08_19_05; Officer Fox Frame by Frame Excerpts at 01_05_11 to 01_06_20; Combined bodycam video, at 0:20 to 0:23.

**C.      The Use of Deadly Force by Officer Fox was Objectively Reasonable.**

Given the indisputable video evidence, Plaintiffs cannot meet their burden to establish the first prong of qualified immunity – a violation of a constitutional or statutory right.

i.      The Fourth Amendment reasonableness standard.

Claims of excessive force are analyzed under the Fourth Amendment's objective reasonableness standard, judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[32] The objective reasonableness standard applies to any use of force by a law enforcement officer, whether during an arrest, investigatory stop, or other seizure.[33] There is no precise formula to apply in making this fact-specific assessment, but factors to consider, as articulated by the Supreme Court in *Graham v. Connor*, include:  the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.[34] Ultimately, however, "the inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force."[35] Moreover,"[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[36]

---

[32]      *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[33]      *Id*. at 395.
[34]      *Id*. at 396.
[35]      *Id*.
[36]      *Id*. at 396–97.

The use of deadly force is only reasonable where the officer has probable cause to believe the suspect poses a threat of death or serious physical harm to the officer or to others.[37] In assessing the degree of threat facing an officer in deadly force cases, the Tenth Circuit, in *Estate of Larsen v. Murr,* set forth the following non-exclusive factors to be considered: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect."[38]

Where, as here, the material facts are not in dispute, the objective legal reasonableness of the officer's use of force is a question of law.[39]

> ii.   Under the totality of the circumstances, the use of deadly force by Officer Fox was objectively reasonable.

The first *Graham* factor to consider is the severity of the crime. In this instance, Mr. Harmon had an outstanding felony warrant arising from an aggravated assault. Moreover, Mr. Harmon then engaged in an attempted aggravated assault on a police officer when he charged Officer Fox with a dangerous weapon, which is also a felony.[40] This factor weights in favor of a finding of objective reasonableness.

The second *Graham* factor to consider is whether the suspect poses an immediate threat to the safety of the officers or others. Specifically, in cases where deadly force is used, the degree

---

[37]   *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).
[38]   *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2009).
[39]   *Mecham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir.2007) (stating "the question of objective reasonableness is not for the jury to decide where the facts are uncontroverted."); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003).
[40]   UTAH CODE § 76-5-103.

of the threat may be assessed utilizing the non-exclusive factors in *Estate of Larsen*. Here,

viewing the events as depicted by the bodycam videos, a reasonable officer on the scene would

have probable cause to believe that Mr. Harmon posed an immediate threat of serious physical

harm to the officers. First, Mr. Harmon did not comply with police commands, despite being

well aware that he was under arrest for his felony warrant. Instead, as the officers gave

commands for him to place his hands behind his back, Mr. Harmon initially appeared to comply,

when suddenly and without warning, he broke free and began to run. Second and more

importantly, Mr. Harmon produced a dangerous weapon, an open knife, and charged towards the

officers, making hostile motions with his right arm and hand raised, while holding the knife in a

stabbing position. Mr. Harmon charged at Officer Fox just seconds after fleeing and before he or

any of the officers could order Mr. Harmon to drop the knife. As shown in the video, Mr.

Harmon's feet and body were facing Officer Fox and Mr. Harmon appeared fixated on Officer

Fox more so than the other officers. Third, the undisputed video evidence shows the close

proximity of Mr. Harmon to Officer Fox on the sidewalk, approximately 5-10 feet away at

most,[41] with Mr. Harmon moving in the direction of Officer Fox with his right arm and hand

raised and holding an open knife. Fourth, the undisputed video evidence indicates that Mr.

Harmon's facial expression appeared hostile and threatening. Faced with these circumstances, a

reasonable officer could conclude that Mr. Harmon intended to cause serious bodily harm to the

officers.[42] In sum, consideration of each of the *Estate of Larsen* factors weigh in favor of a

finding of objective reasonableness.

---

[41]      Still frames from Combined bodycam video.

[42]      In addition, Plaintiffs allege that Officer Fox reported hearing Harmon threaten to "cut"
or "stab" him as Harmon attempted to flee (Pls.' Compl., ECF No. 6-1, at ¶¶ 93, 105) which

The third *Graham* factor to consider is the suspect's attempts to resist or evade arrest. Again, the undisputed video evidence shows that Mr. Harmon knew he was under arrest, initially appeared willing to cooperate, and then deliberately attempted to flee and evade the officers. A reasonable officer would believe that Mr. Harmon was attempting to resist or evade arrest. Therefore, this factor also weighs in favor of a finding of objective reasonableness.

The Tenth Circuit concluded the use of deadly force was objectively reasonable in similar circumstances to those faced by Officer Fox. For example, in *Estate of Larsen*, officers responded to an emergency call that a suspect had threatened to kill someone or himself.[43] As officers approached the suspect's home, the suspect stood alone on the front porch with a large knife.[44] Officers gave repeated commands to drop the knife.[45] Appearing agitated, the suspect raised the knife above his shoulder with the blade pointed outward.[46] The suspect took a step towards an officer who was somewhere between 7 and 20 feet away, and the officer fired his

---

further indicates to a reasonable officer that Mr. Harmon sought to do harm.  Although not alleged, both Officer Smith and Officer Robinson heard Harmon make similar threats about cutting or stabbing or words to that effect. Plaintiffs assert that the reports of the officers are contradicted by the audio/video recordings of the incident because the audio did not capture such statements. However, this absence in the audio recording is hardly remarkable as the recording is largely inaudible due to the movement and scuffling of the officers and Mr. Harmon, and other background noise such as radio traffic. Notably, Mr. Harmon's voice is barely audible during the initial portion of the incident where the officers are conversing with him in close proximity to the body-worn recording devices. Thus, Plaintiffs cannot legitimately contend the audio recording captured the entirety of the incident. Regardless, Mr. Harmon's threatening statements are not material for purposes of this motion because there is ample indisputable evidence to support the conclusion that a reasonable officer could believe that Mr. Harmon's manifest intentions were hostile, threatening and defiant in relation to the officers.

[43]  *Estate of Larsen*, 511 F.3d at 1260.
[44]  *Id*.
[45]  *Id*.
[46]  *Id*.

weapon.[47]. In affirming the district court, the Tenth Circuit found that the officer was faced with an armed suspect who appeared willing and able to attack with a knife, and reasonably concluded the suspect posed an immediate threat to his safety. [48]

Here, Officer Fox was arguably faced with an even greater threat given the circumstances. Mr. Harmon went from appearing cooperative as the officers were peacefully in the process of placing him into handcuffs to instantly appearing combative and unpredictable. Mr. Harmon attempted to evade arrest on a felony warrant and charged at officers in close proximity with a raised knife in his hand. The entire sequence of events occurred in approximately seven seconds, in circumstances that were tense, uncertain and rapidly evolving. Officer Fox was forced to make a split-second decision in ascertaining the threat posed by Mr. Harmon. Considering the totality of the circumstances, the use of deadly force by Officer Fox was objectively reasonable.

### D. No Clearly Established Law Shows the Use of Deadly Force in these Circumstances Violated Harmon's Fourth Amendment Rights.

Plaintiffs likewise cannot meet the second prong of the qualified immunity analysis – that the constitutional right was clearly established at the time of the challenged conduct. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[49] For a right to be "clearly established," the contours of the right must be sufficiently clear so as to give officials fair warning that their

---

[47]     *Id.* at 1260-61.
[48]     *Id.* at 1263.
[49]     *Pearson*, 555 U.S. at 233.

18

conduct is unconstitutional.[50] This means that "every reasonable official would have understood that what he is doing violates that right."[51] Qualified immunity gives governmental officials "breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law."[52] Thus, qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force.'"[53]

Although the law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question "beyond debate."[54] The Supreme Court has instructed that clearly established law should not be defined at a high level of generality.[55]

As set forth in Section C above, the Tenth Circuit has concluded the use of deadly force was objectively reasonable in circumstances similar to those faced by Officer Fox.[56] Thus, Officer Fox was presented with circumstances for which there is no factually similar caselaw that would alert him that his conduct could be unconstitutional. Accordingly, Plaintiffs cannot meet their burden under the second prong of the qualified immunity analysis to show that *every* reasonable officer would have known that the use of deadly force in circumstances faced by Officer Fox was a violation of the Fourth Amendment.

Because Plaintiffs cannot satisfy either prong of the test, Officer Fox is entitled to qualified immunity as a matter of law.

---

[50]   *Saucier v. Katz*, 533 U.S. 194, 202 (2001).
[51]   *Ashcroft v. al-Kidd*, 563 U.S. at 741 (citation and internal quotation omitted).
[52]   *Ashcroft*, 563 U.S. at 743 (citation omitted).
[53]   *Saucier*, 533 U.S. at 202.
[54]   *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation simplified).
[55]   *Id*.
[56]   *Estate of Larsen*, 511 F.3d at 1263.

### III.   PLAINTIFFS FAIL TO STATE AN EQUAL PROTECTION VIOLATION.

Plaintiffs' equal protection claim fails because Plaintiffs allege no facts that plausibly show that Officer Fox's use of deadly force was motivated by racial animus. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."[57] In order to state a race-based equal protection claim, a plaintiff must sufficiently allege that the defendant was "motivated by racial animus."[58] Here, Plaintiffs allege only the conclusory assertion that "Mr. Harmon's [black] race was a substantially motivating factor in Defendant Fox's decision to use excessive force against him."[59] Under the Rule 12(b)(6) standard, this single conclusory claim is not sufficient, and Plaintiffs' equal protection claim should be dismissed.[60]

### IV.   PLAINTIFFS CANNOT STATE A MUNICIPAL LIABILITY CLAIM.

Because Officer Fox's conduct did not violate a constitutional right, the City cannot, as a matter of law, be held liable for Officer Fox's conduct. A municipality can only be liable under § 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort."[61] A municipality cannot be held liable where there was no underlying constitutional violation by any of its officers.[62] Because Plaintiffs cannot state a constitutional violation against Officer Fox, Plaintiffs' claims similarly fail against defendant Salt Lake City.

---

[57]   *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).
[58]   *Id. (*quoting *Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1269 (10th Cir.1989)).
[59]   Pls.' Compl., ECF No. 6-1, at ¶ 176.
[60]   *Iqbal*, 556 U.S. at 678.
[61]   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).
[62]   *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citations omitted).

## V.   PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED WITHOUT PREJUDICE.

The court need not reach the merits of Plaintiffs' state law claims if it finds the federal claims should be dismissed. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[63] In that event, the Court may dismiss the state law claims without prejudice. Alternatively, as set forth in Section VI., these claims should be dismissed for failure to state a claim for relief.

## VI.   ALTERNATIVELY, PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER STATE LAW.

### A.   Plaintiffs' Wrongful Death Claim is Barred by the GIAU.

Because Plaintiffs' claims for wrongful death under UTAH CODE § 78B-3-106 asserts an injury arising out of the battery that occurred when Mr. Harmon was shot, the City and Officer Fox are immune from Plaintiffs' wrongful death claim under the Governmental Immunity Act of Utah ("GIAU"), UTAH CODE § 63G-7-101 *et seq.*

Lawsuits brought against governmental entities and/or their employees are governed by the GIAU. The GIAU states:  "[e]xcept as provided in Subsection (3)(c), an action under this chapter against a governmental entity for an injury caused by an act or omission that occurs during the performance of an employee's duties, within the scope of employment, or under color of authority is a plaintiff's exclusive remedy."[64] Unless otherwise provided in the GIAU, "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function."[65] Governmental immunity

---

[63]   *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).
[64]   UTAH CODE § 63G-7-202(3)(a) .
[65]   UTAH CODE § 63G-7-201(1) (2014).

from suit is not waived where the injury alleged "arose out of, in connection with, or results from "assault, battery . . . . . . or a violation of civil rights."[66]

In determining whether a claim is precluded by the GIAU, a court must look to the conduct that was the "proximate cause of the injury" the plaintiff alleges occurred.[67] Immunity is retained for negligence and wrongful death claims where the alleged negligence results in injuries arising out of assault or battery.[68] Plaintiffs' wrongful death claim is based on the act of Officer Fox in shooting Mr. Harmon. Because the alleged injury arose from a battery, Plaintiffs' claims for wrongful death against the City and Officer Fox are barred by the GIAU.

In addition, to the extent Plaintiffs assert that it may assert a claim for wrongful death against Officer Fox because they allege his actions in shooting Mr. Harmon were "willful and malicious," such allegations are not based on underlying facts but rather are mere conclusions or "formulaic recitations" of the elements of a claim. Thus, they cannot be afforded a presumption of truth, and must be excluded from the court's analysis.[69]

---

[66]   UTAH CODE § 63G-7-301(5)(b) (2014).

[67]   *See, e.g. Barneck v. Utah Dep't of Transp.*, 2015 UT 50, ¶¶ 36-49, 353 P.3d 140, 149 (finding courts must look to the "proximate cause" of the injury alleged to determine whether an exception to the waiver of immunity applies); *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1323-24 (10th Cir. 2009) ("[T]he question of immunity under the Utah Governmental Immunity Act focuses on the conduct out of which the injury arose rather than the theory of liability argued by a plaintiff.").

[68]   *See Thomson*, 584 F.3d at 1323 (finding state law claims barred by GIAU, recognizing that injury complained of—Mr. Thomson's death—arose out of the battery that occurred when he was shot by officers); *Chief v. West Valley City*, No. 2:11-CV-643 TS, 2013 WL 6146061, at *12 (D. Utah Nov. 21, 2013) (finding GIAU barred wrongful death claim against police officers for shooting death of Brandon Chief). *Tiede v. Utah State Dep't of Corr.*, 915 P.2d 500, 503 (Utah 1996) (holding that the GIAU bars wrongful death claims that arise out of an assault or battery).

[69]   *Iqbal*, 556 U.S. at 679.

**B.    Plaintiffs Cannot State A Claim for Violation of the Unnecessary Rigor Clause of the Utah Constitution.**

Because the use of deadly force by Officer Fox was objectively reasonable and did not violate clearly established law, Plaintiffs' claim under the Utah Constitution also fails as a matter of law.

Article I, Section IX of the Utah Constitution states as follows: "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor." Although the first sentence closely approximates the language of the Eighth Amendment to the United States Constitution, "the unnecessary rigor provision has no federal counterpart."[70] However, the prohibition against unnecessary rigor clearly allows police to use 'reasonable and necessary force' in making an arrest.[71] In order to recover, a plaintiff must establish a "flagrant" violation of constitutional rights – which means that:

> [a] defendant must have violated clearly established constitutional rights of which a reasonable person would have known. To be considered clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that [constitutional] right. The requirement that the unconstitutional conduct be flagrant ensures that a government employee is allowed the ordinary human frailties of forgetfulness, distractibility, or misjudgment without rendering [himself] liable for a constitutional violation.[72]

As set forth in Section II above, the use of deadly force by Officer Fox was objectively reasonable. Moreover, Officer Fox's conduct did not violate a clearly established constitutional right. Therefore, Plaintiffs cannot establish a claim under the unnecessary rigor clause.

---

[70]    *Dexter v. Bosko*, 2008 UT 29, ¶ 7, 184 P.3d 592, 595.
[71]    *Id*. at ¶ 16 (citation simplified).
[72]    *Id*. at ¶¶ 21-23 (citation simplified).

## CONCLUSION

The Court should dismiss Plaintiffs' claims against Officer Fox for violation of the Fourth Amendment based on qualified immunity. The Court should dismiss Plaintiffs' claims against Officer Fox for violation of the equal protection clause on the grounds it fails to plausibly state a claim as a matter of law. Because Plaintiffs cannot state a constitutional violation against Officer Fox, the City likewise cannot be held liable. Finally, Plaintiffs' state law claims should be dismissed without prejudice for lack of subject matter jurisdiction. Alternatively, Plaintiffs' claim for wrongful death under state law should be dismissed with prejudice because it is barred by the GIAU, and Plaintiffs cannot state a claim for violation of the unnecessary rigor clause of the Utah Constitution.

DATED this 9th day of September, 2019.

 /s/  Catherine L. Brabson
CATHERINE L. BRABSON
MARK E. KITTRELL
*Attorneys for Defendants Salt Lake City and Officer Clinton Fox*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of September, 2019, a true and correct copy of the **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** was electronically filed with the Clerk of the Court, which sent notice to:

Andrew G. Deiss
Corey D. Riley
DEISS LAW PC
10 West 100 South, Suite 425
Salt Lake City, UT 84101
adeiss@deisslaw.com
criley@deisslaw.com

 /s/  Lindsay A. Ross