In the Matter of:

# ESTATE OF PATRICK HARMON, SR., et al.

vs.

# SALT LAKE CITY, et al.

## TASHA LASHONDA SMITH

November 10, 2022



P.O. BOX 3265
SALT LAKE CITY, UT 84110
385.707.7254

ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022

IN THE UNITED STATES DISTRICT COURT

STATE OF UTAH, CENTRAL DIVISION

ESTATE OF PATRICK            )
HARMON, SR.; PATRICK         )
HARMON, II, as Personal      )
Representative of the        )   Zoom Videoconference
Estate of Patrick            )   Deposition of:
Harmon, Sr., and heir        )
of Patrick Harmon, Sr.;      )   TASHA LASHONDA SMITH
TASHA SMITH, as heir         )
of Patrick Harmon, Sr.,      )
                             )
      Plaintiffs,            )
                             )
vs.                          )   Case No.
                             )   2:19-cv-00553-HCN-CMR
SALT LAKE CITY, a            )
municipality; and            )
OFFICER CLINTON FOX,         )
in his individual            )   Hon. Howard C. Nielson, Jr.
capacity,                    )
                             )
      Defendants.            )

November 10, 2022 * 9:06 a.m.

Location:

1422 Angelica Street
St. Louis, Missouri

Reporter:  Susette M. Snider, CSR, CRR, RPR

```
 1              A P P E A R A N C E S

 2  FOR THE PLAINTIFFS:

 3              RATHOD | MOHAMEDBHAI LLC
                Nicholas A. Lutz
 4              Attorney at Law
                2701 Lawrence Street, Suite 100
 5              Denver, Colorado 80205
                Tel:  303.578.4400
 6              nl@rmlawyers.com

 7              DEISS LAW PC
                Corey Riley
 8              Attorney at Law
                10 West 100 South, Suite 425
 9              Salt Lake City, Utah 84101
                Tel:  801.433.0226
10              criley@deisslaw.com

11  FOR THE DEFENDANTS:

12              SALT LAKE CITY CORPORATION
                Katherine R. Nichols
13              Attorney at Law
                451 South State Street, Suite 505A
14              Salt Lake City, Utah 84111
                Tel:  801.535.7788
15              katherine.nichols@slcgov.com

16

17

18                  I N D E X

19  TASHA LASHONDA SMITH:                      PAGE

20    Examination by Ms. Nichols...................  3

21

22              E X H I B I T S

23              (None marked)

24

25
```

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID.1560   Page 4 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    3

```
 1                P R O C E E D I N G S

 2

 3                TASHA LASHONDA SMITH,

 4            having been first duly sworn,

 5          was examined and testified as follows:

 6

 7                    EXAMINATION

 8   BY MS. NICHOLS:

 9        Q.    Ms. Smith, thank you for being here today.

10              My name is Katie Nichols.  I represent the

11   defendants in this matter.

12              What is your full name?

13        A.    Tasha Smith.

14        Q.    Do you have a middle name?

15        A.    Yes, ma'am.  LaShonda.

16        Q.    I have a number of questions for you today

17   related to this case.  And I recognize that these

18   topics may be difficult or painful.  It's not my

19   intention to cause you any distress.  If at any point

20   you would like to take a break, that's perfectly

21   fine.  Just let me know.  I would ask that if there's

22   any questions pending that you finish answering those

23   before we take a break.

24              Does that make sense?

25        A.    Yes, ma'am.
```

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID.1561  Page 5 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    4

 1          Q.    Where do you currently live?

 2          A.    St. Hughes, Missouri.

 3          Q.    Who do you live with?

 4          A.    Myself and my kids.

 5          Q.    How many kids do you have?

 6          A.    I have three.

 7          Q.    How long have you lived in St. Louis?

 8          A.    My whole life.

 9          Q.    You've never lived outside of St. Louis

10   City?

11          A.    No.

12          Q.    How long have you lived in that particular

13   location, in that home?

14          A.    Two years.

15          Q.    What is your date of birth?

16          A.    January 28, 1991.

17          Q.    Do you have a spouse or partner?

18          A.    No, ma'am.

19          Q.    Have you ever been involved in a lawsuit

20   or court case before?

21          A.    No.

22          Q.    Have you ever been deposed before?

23          A.    I don't understand.

24          Q.    Have you ever -- this is a deposition.

25   Have you ever participated at a deposition like this

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1562  Page 6 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    5

 1  before?

 2       A.   No.

 3       Q.   I have a number of questions for you about

 4  your father.  Obviously, you can only answer what you

 5  know, so if you don't know a particular question,

 6  that's perfectly fine to say.

 7       A.   Okay.

 8       Q.   Was Patrick Harmon, Sr., your biological

 9  father?

10       A.   Yes.

11       Q.   What is the name of your mother?

12       A.   Antoinette Baldwin.

13       Q.   Were your mother and father married?

14       A.   No.

15       Q.   Do you know, were they in a relationship?

16       A.   Yes.

17       Q.   Do you know for how long?

18       A.   Two years.

19       Q.   Do you know the years of that

20  relationship?

21       A.   No, ma'am.

22       Q.   Were they together at the time that you

23  were born in 1991?

24       A.   Yes.

25       Q.   Do you know if they ever lived together?

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID.1563  Page 7 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    6

1      A.    Yes.

2      Q.    Is your mother living?

3      A.    Yes, she is.

4      Q.    Do you know if she was in contact with

5  Mr. Harmon in the years prior to his death?

6      A.    Just through me.

7      Q.    Where was Mr. Harmon born?

8      A.    In St. Louis, Missouri.

9      Q.    And where did he live growing up?

10      A.    In the city of St. Louis.

11      Q.    Do you know if he lived outside of

12  St. Louis before the age of 18?

13      A.    No, I don't know.

14      Q.    How many siblings do you have?

15      A.    From my dad's?

16      Q.    Yes.

17      A.    I think it's five.

18      Q.    Do you know their names?

19      A.    Yes.  My Aunt Helen, my Uncle Curt -- his

20  name is Curtis -- my Uncle Chris, Uncle Rodney and

21  Sheila.

22      Q.    Have you met all of them --

23      A.    Yes.

24      Q.    -- in person?

25            Are all of them still living?

Case 2:19-cv-00553-HCN-CMR Document 91-3 Filed 12/09/22 PageID.1564 Page 8 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    7

1       A.    All except two.

2       Q.    Which ones are deceased?

3       A.    Curtis and Sheila.

4       Q.    Did you live in the same house as

5  Mr. Harmon when you were growing up?

6       A.    For a short time.

7       Q.    Do you know for how long?

8       A.    Probably, about, I'd say, six months to a

9  year.

10      Q.    Was that the first six months to a year of

11 your life?

12      A.    Yes.

13      Q.    After the age of one, did you ever live in

14 the same home as Mr. Harmon?

15      A.    No.

16      Q.    When you were growing up, before the age

17 of 18, who else did you live with?

18      A.    My mother.

19      Q.    Anyone else?

20      A.    No.

21      Q.    Do you have any siblings?

22      A.    Yes.

23      Q.    How many?

24      A.    On my father's side, one sibling, which is

25 Patrick, and then my mother's side, I have four.

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID 1565   Page 9 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    8

 1            MS. NICHOLS:  Sorry.  Let's just pause for
 2   a moment.  It looks like we lost Mr. Lutz, so let's
 3   just wait for him to log back on.
 4            And we can be off the record for this.
 5            (Recess from 9:12 a.m. to 9:13 a.m.)
 6            MS. NICHOLS:  Let's go back on the record.
 7            Susette, could you read back the last
 8   question?
 9            (The record was read as follows:
10            "Question:  Do you have any siblings?
11            "Answer:  Yes.
12            "Question:  How many?
13            "Answer:  On my father's side, one
14        sibling, which is Patrick, and then my mother's
15        side, I have four." )
16        Q.   (By Ms. Nichols)  Did you live with the
17   four siblings on your mother's side growing up?
18        A.   Yes.
19        Q.   Are they older or younger than you?
20        A.   They're older.
21        Q.   Did your mother ever have a spouse or
22   partner that lived in the home with you growing up?
23        A.   Yes.
24        Q.   How many spouses or partners?
25        A.   There was one.

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1566  Page 10 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    9

1      Q.    What was the name of that person?

2      A.    Mark Smith.

3      Q.    Do you consider Mr. Smith your father or

4  stepfather?

5      A.    Stepfather, yes.

6      Q.    Did you take his last name?

7      A.    Yes.

8      Q.    At what age did you take his last name?

9      A.    I think it was, like, three or four, after

10  they got married.

11     Q.    Were you -- was your name at birth -- your

12  last name at birth Harmon?

13     A.    Yes.

14     Q.    Was it your decision to take his last

15  name?

16     A.    No.

17     Q.    How would you describe your relationship

18  with your father when you were growing up?

19     A.    We didn't really have a relationship until

20  I got older.

21     Q.    Did you have any contact with him after

22  the age of one through the age of eighteen?

23     A.    No.  I think -- I didn't start talking to

24  my father until about 20 -- until I was in my 20s, 21

25  or something, if I'm not mistaken.

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID 1567   Page 11 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    10

 1      Q.    Sorry.  What was the last thing you said?

 2      A.    About 21.

 3            MS. NICHOLS:  And just to confirm,

 4   Mr. Lutz, are you able to hear us?

 5            MR. LUTZ:  Yep.

 6            MS. NICHOLS:  Okay.

 7            MR. LUTZ:  Good to go.

 8      Q.    (By Ms. Nichols)  How did you get in touch

 9   with Mr. Harmon when you were in your 20s?

10      A.    My uncle -- my uncle saw my mother, and

11   that's how we got in contact again.  My mother got my

12   father's number from his brother.

13      Q.    Which uncle?

14      A.    My Uncle Curt, Curtis.

15      Q.    After your mother got your -- got

16   Mr. Harmon's number, did you reach out to Mr. Harmon?

17      A.    Yes.

18      Q.    Did you reach out to him on the phone?

19      A.    Yes.

20      Q.    Do you recall when that first conversation

21   occurred?

22      A.    Yes.

23      Q.    When was that?

24      A.    Had to have been -- I'm not sure the date.

25      Q.    Sometime when you were in your early 20s?

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID.1568   Page 12 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                         11

1      A.    Yes.

2      Q.    Can you describe that first conversation

3  with him?

4      A.    He was excited; I was excited.  He was

5  kind taken aback because I called him, I reached out.

6  So it was really emotional, because I had been

7  waiting to see him, also, and talk to him and get to

8  know him and just see my father.

9      Q.    Had you made efforts to locate your father

10  prior to that time?

11      A.    Yes.  I would try to type his name into

12  Facebook.

13      Q.    Were you ever able to locate him?

14      A.    No.  I just kept finding Patrick, Jr., but

15  I wasn't sure.

16      Q.    Growing up, did you have any contact with

17  Patrick, Jr.?

18      A.    No.

19      Q.    When did you first learn that you were

20  related to Patrick, Jr.?

21      A.    When I spoke with my father.

22      Q.    In that first conversation?

23      A.    Yes.

24      Q.    Do you know at the time of that first

25  conversation where Mr. Harmon was or where he was

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID 1569   Page 13 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    12

 1  living?

 2         A.    He was in Utah, Salt Lake City, Utah.

 3         Q.    Were you surprised to hear he was in Utah?

 4         A.    No.

 5         Q.    After that first conversation, how many

 6  times did you have phone conversations with him?

 7         A.    Almost every day.

 8         Q.    For how long?

 9         A.    How long was the conversations?

10         Q.    I'm sorry.  That was a bad question.

11               For what period of time did you talk to

12  him almost every day?

13         A.    Well, probably about 10, 20 minutes,

14  depending on how busy we were.

15         Q.    And when you say you talked to him almost

16  every day, did that continue for several weeks or

17  several months?

18         A.    That continued until my father passed.

19         Q.    So how many years would that have been

20  from the time that you first connected with him until

21  the date he passed?

22         A.    About four years.

23         Q.    Did you ever see him in person?

24         A.    Yes.

25         Q.    How many times?

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID.1570   Page 14 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    13

1          A.    I saw him in person twice.

2          Q.    Do you recall the dates of those meetings?

3          A.    No.

4          Q.    Where did you meet him?

5          A.    At my house.

6          Q.    In St. Louis?

7          A.    Yes.

8          Q.    Do you know, was he living in St. Louis at

9    the time?

10         A.    No.  He had came to visit.

11         Q.    Do you recall the approximate years that

12   those visits took place?

13         A.    I know when I first -- when I was in my

14   early 20s, that's when I first met him.  So he came

15   to see me within that first year, and he stayed about

16   a week.

17         Q.    Do you recall the second visit, how long

18   after the first one it was?

19         A.    About five months.

20         Q.    How long did the second visit last?

21         A.    Three days.

22         Q.    Did he stay with you during that time?

23         A.    Yes, and his sister.

24         Q.    And his sister?

25         A.    Yes.

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID.1571   Page 15 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                            14

 1          Q.    You sort of split time between both of
 2   your places?
 3          A.    Yes.
 4          Q.    Prior to reconnecting with him in your
 5   early 20s, did you know his five siblings?
 6          A.    Before I met him?
 7          Q.    Yes.
 8          A.    No.
 9          Q.    So you connected with him around the
10   same -- let me start over.
11                You connected with his siblings around the
12   same time as you connected with him; is that right?
13          A.    Yes.
14          Q.    How would you describe those visits that
15   you had with him?
16          A.    Exciting, emotional, happy.
17          Q.    Did he have a chance to meet your
18   children?
19          A.    Yes.
20          Q.    Did you ever travel to visit him in Utah
21   or anywhere else?
22          A.    No.
23          Q.    Did Mr. Harmon serve any time in jail or
24   prison?
25          A.    To my knowledge, yes.

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1572  Page 16 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    15

1     Q.    Do you know if he served time on more than

2  one occasion?

3     A.    No, I don't know.

4     Q.    Do you know for how long he served?

5     A.    No.

6     Q.    Do you know for what reason he was

7  serving?

8     A.    No.

9     Q.    Do you know where he was in jail or

10 prison?

11     A.    No.

12     Q.    You didn't ever visit him while he was in

13 jail or prison?

14     A.    No.

15     Q.    In the Complaint it states, "Mr. Harmon

16 did not lead a perfect life."

17           Did you write that?

18     A.    No.

19     Q.    What does that mean to you?

20     A.    I guess he made some mistakes in his life,

21 and I guess that's what made him not perfect, I

22 guess.

23     Q.    Let me ask, do you agree with that

24 statement?

25     A.    No.

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1573  Page 17 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    16

 1        Q.    Why don't you agree with that statement?

 2        A.    Because -- I don't agree with it because I

 3   feel like it's down-talking my father.

 4        Q.    The Complaint also states, "Prior to his

 5   death, he had found renewed spirituality."

 6              What did that mean?

 7        A.    He had found a religion.

 8        Q.    Do you know when that occurred?

 9        A.    No.

10        Q.    Did you speak with Mr. Harmon about his

11   renewed spirituality?

12        A.    No.

13        Q.    When did you first connect directly with

14   Patrick, Jr.?

15        A.    Within the first week I spoke with my dad.

16        Q.    Did you reach out to Patrick, Jr.?

17        A.    Yes.

18        Q.    What was his reaction when you reached

19   out?

20        A.    He was happy.

21        Q.    Do you know if he had spoken to Mr. Harmon

22   at the time you reached out?

23        A.    Yes.

24        Q.    Did he reconnect with Mr. Harmon around

25   the same time you did, as far as you know?

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1574  Page 18 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                17

```
 1        A.    No.  I don't know.
 2        Q.    Prior to reconnecting with your father in
 3   your early 20s, had you had any communication with
 4   him at all since you were about one year old?
 5        A.    No.
 6        Q.    Did you receive any letters or postcards
 7   or anything like that?
 8        A.    No.
 9        Q.    Would you be able to estimate how many
10   times you spoke with Mr. Harmon after the time you
11   reconnected with him?
12        A.    No.  It was a lot, but I can't recall the
13   exact number.
14        Q.    How did you communicate with him?  Was it
15   exclusively phone calls, or were there text messages,
16   letters, or other forms of communication?
17        A.    A phone.
18        Q.    You never texted with him?
19        A.    No.
20        Q.    Do you know where Mr. Harmon was living at
21   the time of his death?
22        A.    To my knowledge, with his girlfriend.
23        Q.    Do you know her name?
24        A.    No.  I can't remember.
25        Q.    Did you ever meet her?
```

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID 1575   Page 19 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    18

 1        A.    No.  I spoke to her on the phone a couple

 2    times.

 3        Q.    Was that in Utah?

 4        A.    Yes.  I think, yes.

 5        Q.    Did Mr. Harmon ever experience periods of

 6    homelessness?

 7        A.    I don't know.

 8        Q.    Do you have any photographs of your

 9    father?

10        A.    Yes.

11        Q.    Are they photographs that you took?

12        A.    No.

13        Q.    Do you have any photographs that you took

14    of your father?

15        A.    No.

16        Q.    Where did you get the photographs that you

17    do have?

18        A.    My aunt.

19        Q.    Which aunt is that?

20        A.    Helen Harmon.

21        Q.    How would you describe Mr. Harmon's

22    physical health at the time of his death?

23        A.    Healthy to my --

24              MR. LUTZ:  Foundation.

25              MS. NICHOLS:  I'm sorry.  Mr. Lutz, I

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1576  Page 20 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022          19

```
 1    couldn't hear your objection.
 2            MR. LUTZ:  Objection to foundation.
 3       Q.   (By Ms. Nichols)  Sorry.  Ms. Smith, could
 4    you answer again?
 5       A.   Could you repeat the question?
 6       Q.   Sure.  Let's start that over.
 7            How would you describe Mr. Harmon's
 8    physical health at the time of his death?
 9       A.   I don't know.  I think healthy.
10       Q.   Do you know if he saw a doctor regularly?
11       A.   No, I don't know.
12       Q.   Do you know if he had been diagnosed with
13    my diseases, chronic illnesses or conditions?
14       A.   No.
15       Q.   I'm sorry.  No, you don't know, or no, he
16    was not diagnosed?
17       A.   No, I don't know.
18       Q.   Have Mr. Harmon's -- and these are all
19    just going to be to the best of your knowledge.
20            Had Mr. Harmon ever been diagnosed with
21    any mental health conditions?
22       A.   No.  Not that I know of.
23       Q.   Did you ever suspect that he might have an
24    undiagnosed mental health condition?
25       A.   I don't know.
```

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID.1577   Page 21 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022          20

1      Q.    Has anyone in your family ever told you
2   they suspected he had an undiagnosed mental health
3   condition?
4      A.    No.
5      Q.    Did Mr. Harmon smoke tobacco?
6      A.    When I seen him, no.
7      Q.    Did he drink alcohol?
8      A.    I don't know.
9      Q.    Did he use prescription drugs?
10      A.    I don't know.
11      Q.    Did he use any drugs that required a
12   prescription for which he did not have a
13   prescription?
14      A.    I don't know.
15      Q.    Did he use any illegal drugs?
16      A.    I don't know.
17      Q.    Do you know if Mr. Harmon was ever treated
18   for substance abuse or use disorder?
19      A.    I don't know.
20      Q.    How old was your father when he died?
21      A.    I don't know.  I don't remember.
22      Q.    Okay.  When was his birthday?
23      A.    Birthday is August 14th?
24      Q.    Do you remember what year?
25      A.    No.

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID.1578  Page 22 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    21

 1        Q.    Aside from yourself and Patrick, Jr., do
 2   you know if Mr. Harmon had any other biological
 3   children?
 4        A.    I don't know.
 5        Q.    Do you know if he had any adopted
 6   children?
 7        A.    I don't know.
 8        Q.    Do you know if he had any dependents at
 9   the time of his death?
10        A.    No, I don't know.  Would we be, like,
11   dependents?
12        Q.    Aside from you and Patrick, Jr., anyone
13   else that was financially depending on him?
14        A.    No, I don't know.
15        Q.    Do you know if Mr. Harmon had a trust or
16   will or anything like that when he died?
17        A.    No, I don't know.
18        Q.    Do you have any information about
19   Mr. Harmon's finances in the years before his death
20   or at the time of his death?
21        A.    No.
22        Q.    Do you know if he was employed in the
23   years before his death?
24        A.    He told me he was, but I'm not sure.
25        Q.    What did he tell you as far as his

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID 1579   Page 23 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                                    22

 1  employment?

 2       A.    That he was working at, like, a warehouse.

 3       Q.    In Utah?

 4       A.    I guess, yeah.  That's what he say.

 5       Q.    Did he have any other employment besides

 6  the warehouse?

 7       A.    No.

 8       Q.    Did he ever provide you with any financial

 9  assistance?

10       A.    Yes.

11       Q.    When did that occur?

12       A.    When my gas was cut off.

13       Q.    Do you know the approximate date?

14       A.    No.

15       Q.    Do you know how long it was after you

16  reconnected with him that he provided that

17  assistance?

18       A.    Oh, probably about five or six months.

19       Q.    And how much money did he provide?

20       A.    He sent me 230-something, because my gas

21  got cut off, so about 230-odd dollars.

22       Q.    Aside from that time, did he provide you

23  any other financial assistance?

24       A.    Probably for gas money or something.

25       Q.    How much total did he provide you?

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1580  Page 24 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                     23

1       A.    All together, probably about $500.

2       Q.    Do you know what assets Mr. Harmon had at

3   the time of his death?

4       A.    No.

5       Q.    Do you know if he filed tax returns in the

6   years prior to his death?

7       A.    No, I don't.

8       Q.    After Mr. Harmon's death, did you receive

9   anything that belonged to him?

10      A.    Ashes.

11      Q.    Anything else?

12      A.    No.  Just pictures and ashes.

13      Q.    What types of monetary damages are you

14  seeking in this litigation?

15           MR. LUTZ:  Objection.  Calls for a legal

16  conclusion.

17           Go ahead, Tasha.

18           THE WITNESS:  What is "monetary"?

19      Q.    (By Ms. Nichols)  Let me be a little more

20  specific.  You're seeking money from defendants in

21  this lawsuit, correct?

22      A.    Yes.

23      Q.    Are you seeking money for loss of

24  companionship or loss of consortium with Mr. Harmon?

25           MR. LUTZ:  Objection.  Calls for a legal

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID.1581   Page 25 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                                     24

```
 1   conclusion.

 2         Q.    (By Ms. Nichols)  You can go ahead and

 3   answer.

 4         A.    Yes.

 5         Q.    Are you seeking a specific dollar amount

 6   for that?

 7         A.    No.

 8         Q.    Are you seeking money for the loss of

 9   financial support from your father?

10         A.    Yes.

11         Q.    Are you seeking a specific dollar amount

12   for that?

13         A.    No.

14         Q.    Are you seeking money for loss or

15   reduction of inheritance?

16         A.    No.

17         Q.    Are you seeking money for pain and

18   suffering?

19         A.    Yes.

20         Q.    Are you seeking a specific amount for

21   that?

22         A.    No.

23               MR. LUTZ:  Objection.  Calls for a legal

24   conclusion.

25         Q.    (By Ms. Nichols)  And are you seeking
```

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID 1582   Page 26 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                25

 1  punitive damages?

 2       A.    Punitive, yes.

 3             MR. LUTZ:  Objection.  Calls for a legal

 4  conclusion.

 5       Q.   (By Ms. Nichols)  Let me try again.  Are

 6  you seeking money for the purpose of punishment of

 7  defendants?

 8             MR. LUTZ:  Same objection.

 9       Q.   (By Ms. Nichols)  Sorry.  You can go ahead

10  and answer that question.

11       A.    Yes.

12       Q.    Are you seeking a specific amount for

13  that?

14       A.    No, ma'am.

15       Q.    Ms. Smith, have you watched any of the

16  body cam videos of the incident?

17       A.    Yes.

18       Q.    Which of the videos have you watched?

19       A.    All of them.

20       Q.    When did you first watch them?

21       A.    On Facebook.

22       Q.    Do you know approximately when that was?

23       A.    In 2017.

24       Q.    Do you know how many times you have

25  watched them?

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID.1583  Page 27 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    26

1        A.    No, not specifically.

2        Q.    Multiple times?

3        A.    Yes.

4              MR. LUTZ:  Susette, I'd like the record to

5    reflect that Ms. Smith is in tears.

6        Q.    (By Ms. Nichols)  Ms. Smith, I do have a

7    couple of questions about the incident and understand

8    this is a painful topic.  Would you like to take a

9    break for a minute?

10       A.    No, ma'am.

11       Q.    Okay.  If you would like to, please let me

12   know.

13       A.    Okay.

14       Q.    Are you aware that Officer Clinton Fox

15   says that he saw a knife in Mr. Harmon's hand?

16             MR. LUTZ:  Object to foundation.

17             THE WITNESS:  Yes, I'm aware.

18       Q.    (By Ms. Nichols)  Are you aware that a

19   knife can be seen next to Mr. Harmon's hand after he

20   falls to the ground?

21             MR. LUTZ:  Same objection.

22       Q.    (By Ms. Nichols)  I'm sorry.  What was

23   your answer, Ms. Smith?

24       A.    I'm aware.

25       Q.    Is it your position that Mr. Harmon did

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1584  Page 28 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    27

1  not have a knife in his hand when Officer Fox fired

2  his weapon?

3          A.    Yes.

4          Q.    Where would the knife on the ground come

5  from?

6                MR. LUTZ:  Objection.  Calls for

7  speculation and lack of foundation.

8                THE WITNESS:  I don't know.

9          Q.    (By Ms. Nichols)  Do you believe it was

10 already on the ground when Mr. Harmon fell?

11               MR. LUTZ:  Same objections.

12               THE WITNESS:  I don't know.

13         Q.    (By Ms. Nichols)  I'm sorry.  Your answer

14 was "I don't know"?

15         A.    Yes.

16         Q.    Do you believe one of the officers planted

17 the knife on the ground?

18         A.    I don't know.

19               MR. LUTZ:  Same objections.

20         Q.    (By Ms. Nichols)  Do you know if

21 Mr. Harmon was right-handed or left-handed?

22         A.    No.

23         Q.    Do you believe that Officer Fox should not

24 have fired his weapon when he did?

25               MR. LUTZ:  Objection.  Calls for a legal

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1585  Page 29 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    28

1  conclusion.

2        Q.    (By Ms. Nichols)  You can answer.

3        A.    Can you repeat the question?

4        Q.    Sure.

5              Do you believe Officer Fox should not have

6  fired his weapon when he did?

7        A.    Yes.

8        Q.    What is your contention that he should

9  have done instead?

10             MR. LUTZ:  Same objection.  Calls for a

11  legal conclusion and speculation.

12             Go ahead, Tasha.

13             THE WITNESS:  Should have waited.

14  Should -- I feel like he should have waited.  He

15  should have figured out what was going on first.

16        Q.    (By Ms. Nichols)  Did you give any

17  interviews or statements regarding the incident or

18  Mr. Harmon's death?

19        A.    No.

20        Q.    Do you know if any members of your family

21  did?

22        A.    My father's side, yeah.

23        Q.    Ms. Smith, do you have any social media

24  accounts?

25        A.    Yes.

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1586  Page 30 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                    29

 1          Q.    What accounts do you have?

 2          A.    Facebook, Instagram.

 3          Q.    Do you have a Twitter account?

 4          A.    No.

 5          Q.    Have you ever posted on those accounts

 6   about the incident?

 7          A.    Facebook.

 8          Q.    Have you ever posted on those accounts

 9   about your father separate from the incident?

10          A.    Yeah, like his birthdays or Father's Day.

11          Q.    Did Mr. Harmon have a Facebook account?

12          A.    No, I don't think so.

13                MS. NICHOLS:  I think I might be done.

14   Could we take a short break so I can double-check my

15   notes?

16                MR. LUTZ:  Yeah.

17                MS. NICHOLS:  Mr. Lutz, did you want to --

18   I only need two minutes, but if you need a little bit

19   more time, that's fine with me.

20                MR. LUTZ:  Two minutes is great with me.

21                MS. NICHOLS:  All right.  We'll go off the

22   record.  Thank you.

23                (Recess from 9:43 a.m. to 9:44 a.m.)

24                MS. NICHOLS:  Okay.  Let's go back on the

25   record.

Case 2:19-cv-00553-HCN-CMR  Document 91-3  Filed 12/09/22  PageID 1587  Page 31 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                30

 1              Ms. Smith, I don't have any more questions
 2  for you.
 3              Mr. Lutz, I'll turn it over to you if you
 4  have anything.
 5              MR. LUTZ:  I don't have anything
 6  additional for Ms. Smith.
 7              MS. NICHOLS:  Ms. Smith.  Thank you for
 8  participating.
 9              THE WITNESS:  Thank you for hearing me
10  out.  Have a great day.
11              MS. NICHOLS:  You too.
12              MR. LUTZ:  Thank you, Susette.
13              (The deposition concluded at 9:45 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25

1                    REPORTER'S CERTIFICATE

2

3

4            I, Susette M. Snider, Certified Shorthand
Reporter, Certified Shorthand Reporter and Registered
5    Professional Reporter do hereby certify:

6            That prior to being examined, the witness,
Tasha LaShonda Smith, was by me duly sworn to tell
7    the truth, the whole truth, and nothing but the
truth;
8
            That said deposition was taken down by me
9    in stenotype on November 10, 2022, via Zoom
videoconference and was thereafter transcribed and
10   that a true and correct transcription of said
testimony is set forth in the preceding pages in
11   accordance with my ability to hear and understand the
Zoom videoconference audio;
12
            I further certify that a reading copy was
13   sent to Nicholas A. Lutz, Attorney at Law, for the
witness to read and sign and then return to me for
14   filing with Katherine R. Nichols, Attorney at Law.

15           I further certify that I am not kin or
otherwise associated with any of the parties to said
16   cause of action and that I am not interested in the
outcome thereof.
17
            WITNESS MY HAND this 30th day of November,
18   2022.

19

20

21

22   _____

23          Susette M. Snider, CSR, CRR, RPR

24

25

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID 1589   Page 33 of 36
ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                                                    32

```
 1   Case:  Estate of Patrick Harmon, Sr., v. Salt Lake City
     Case No.:  2:19-cv-00553-HCN-CMR
 2   Reporter:  Susette M. Snider
     Date taken:  November 10, 2022
 3
                        WITNESS CERTIFICATE
 4
             I, TASHA LASHONDA SMITH, HEREBY DECLARE:
 5           That I am the witness in the foregoing
     transcript; that I have read the transcript and know
 6   the contents thereof; that with these corrections I
     have noted this transcript truly and accurately
 7   reflects my testimony.

 8   PAGE-LINE          CHANGE/CORRECTION                    REASON
     _____    _____      _____
 9   _____    _____      _____
     _____    _____      _____
10   _____    _____      _____
     _____    _____      _____
11   _____    _____      _____
     _____    _____      _____
12   _____    _____      _____
     _____    _____      _____
13   _____    _____      _____
     _____    _____      _____
14   _____    _____      _____
     _____    _____      _____
15   _____    _____      _____
     _____    _____      _____
16   _____    _____      _____
     _____    _____      _____
17   _____    _____      _____
     _____    _____      _____
18   _____    _____      _____

19
     _____    No corrections were made.
20

21        I, Tasha LaShonda Smith, hereby declare under
     the penalties of perjury of the laws of the United
22   States of America and the laws of the State of Utah
     that the foregoing is true and correct.
23
                          _____
24                        Tasha LaShonda Smith

25             Date:  _____
```

ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                                   1

**$**

**$500**  23:1

**1**

**10**  12:13
**14th**  20:23
**18**  6:12 7:17
**1991**  4:16 5:23

**2**

**20**  9:24 12:13
**2017**  25:23
**20s**  9:24 10:9,25 13:14
  14:5 17:3
**21**  9:24 10:2
**230-odd**  22:21
**230-something**  22:20
**28**  4:16

**9**

**9:12**  8:5
**9:13**  8:5
**9:43**  29:23
**9:44**  29:23
**9:45**  30:13

**A**

**a.m.**  8:5 29:23 30:13
**aback**  11:5
**abuse**  20:18
**account**  29:3,11
**accounts**  28:24 29:1,5,
  8
**additional**  30:6
**adopted**  21:5
**age**  6:12 7:13,16 9:8,22
**agree**  15:23 16:1,2
**ahead**  23:17 24:2 25:9
  28:12
**alcohol**  20:7
**amount**  24:5,11,20
  25:12
**answering**  3:22
**Antoinette**  5:12
**approximate**  13:11
  22:13

**approximately**  25:22
**ashes**  23:10,12
**assets**  23:2
**assistance**  22:9,17,23
**August**  20:23
**aunt**  6:19 18:18,19
**aware**  26:14,17,18,24

**B**

**back**  8:3,6,7 29:24
**bad**  12:10
**Baldwin**  5:12
**belonged**  23:9
**biological**  5:8 21:2
**birth**  4:15 9:11,12
**birthday**  20:22,23
**birthdays**  29:10
**bit**  29:18
**body**  25:16
**born**  5:23 6:7
**break**  3:20,23 26:9
  29:14
**brother**  10:12
**busy**  12:14

**C**

**called**  11:5
**calls**  17:15 23:15,25,
  24:23 25:3 27:6,25
  28:10
**cam**  25:16
**case**  3:17 4:20
**chance**  14:17
**children**  14:18 21:3,6
**Chris**  6:20
**chronic**  19:13
**city**  4:10 6:10 12:2
**Clinton**  26:14
**communicate**  17:14
**communication**  17:3,
  16
**companionship**  23:24
**Complaint**  15:15 16:4
**concluded**  30:13
**conclusion**  23:16 24:1,
  24 25:4 28:1,11
**condition**  19:24 20:3

**conditions**  19:13,21
**confirm**  10:3
**connect**  16:13
**connected**  12:20 14:9,
  11,12
**consortium**  23:24
**contact**  6:4 9:21 10:11
  11:16
**contention**  28:8
**continue**  12:16
**continued**  12:18
**conversation**  10:20
  11:2,22,25 12:5
**conversations**  12:6,9
**correct**  23:21
**couple**  18:1 26:7
**court**  4:20
**Curt**  6:19 10:14
**Curtis**  6:20 7:3 10:14
**cut**  22:12,21

**D**

**dad**  16:15
**dad's**  6:15
**damages**  23:13 25:1
**date**  4:15 10:24 12:21
  22:13
**dates**  13:2
**day**  12:7,12,16 29:10
  30:10
**days**  13:21
**death**  6:5 16:5 17:21
  18:22 19:8 21:9,19,20,
  23 23:3,6,8 28:18
**deceased**  7:2
**decision**  9:14
**defendants**  3:11 23:20
  25:7
**dependents**  21:8,11
**depending**  12:14 21:13
**deposed**  4:22
**deposition**  4:24,25
  30:13
**describe**  9:17 11:2
  14:14 18:21 19:7
**diagnosed**  19:12,16,20
**died**  20:20 21:16
**difficult**  3:18

**directly**  16:13
**diseases**  19:13
**disorder**  20:18
**distress**  3:19
**doctor**  19:10
**dollar**  24:5,11
**dollars**  22:21
**double-check**  29:14
**down-talking**  16:3
**drink**  20:7
**drugs**  20:9,11,15
**duly**  3:4

**E**

**early**  10:25 13:14 14:5
  17:3
**efforts**  11:9
**eighteen**  9:22
**emotional**  11:6 14:16
**employed**  21:22
**employment**  22:1,5
**estimate**  17:9
**exact**  17:13
**EXAMINATION**  3:7
**examined**  3:5
**excited**  11:4
**Exciting**  14:16
**exclusively**  17:15
**experience**  18:5

**F**

**Facebook**  11:12 25:21
  29:2,7,11
**falls**  26:20
**family**  20:1 28:20
**father**  5:4,9,13 9:3,18,
  24 11:8,9,21 12:18 16:3
  17:2 18:9,14 20:20 24:9
  29:9
**father's**  7:24 8:13
  10:12 28:22 29:10
**feel**  16:3 28:14
**fell**  27:10
**figured**  28:15
**filed**  23:5
**finances**  21:19
**financial**  22:8,23 24:9

Case 2:19-cv-00553-HCN-CMR   Document 91-3   Filed 12/09/22   PageID.1591   Page 35 of 36

ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                                        2

financially 21:13
finding 11:14
fine 3:21 5:6 29:19
finish 3:22
fired 27:1,24 28:6
forms 17:16
found 16:5,7
foundation 18:24 19:2
 26:16 27:7
Fox 26:14 27:1,23 28:5
full 3:12

**G**

gas 22:12,20,24
girlfriend 17:22
give 28:16
Good 10:7
great 29:20 30:10
ground 26:20 27:4,10,
 17
growing 6:9 7:5,16
 8:17,22 9:18 11:16
guess 15:20,21,22 22:4

**H**

hand 26:15,19 27:1
happy 14:16 16:20
Harmon 5:8 6:5,7 7:5,
 14 9:12 10:9,16 11:25
 14:23 15:15 16:10,21,
 24 17:10,20 18:5,20
 19:20 20:5,17 21:2,15
 23:2,24 26:25 27:10,21
 29:11
Harmon's 10:16 18:21
 19:7,18 21:19 23:8
 26:15,19 28:18
health 18:22 19:8,21,
 24 20:2
healthy 18:23 19:9
hear 10:4 12:3 19:1
hearing 30:9
Helen 6:19 18:20
home 4:13 7:14 8:22
homelessness 18:6
house 7:4 13:5
Hughes 4:2

**I**

illegal 20:15
illnesses 19:13
incident 25:16 26:7
 28:17 29:6,9
information 21:18
inheritance 24:15
Instagram 29:2
intention 3:19
interviews 28:17
involved 4:19

**J**

jail 14:23 15:9,13
January 4:16
Jr 11:14,17,20 16:14,16
 21:1,12

**K**

Katie 3:10
kids 4:4,5
kind 11:5
knife 26:15,19 27:1,4,
 17
knowledge 14:25
 17:22 19:19

**L**

lack 27:7
Lake 12:2
Lashonda 3:3,15
lawsuit 4:19 23:21
lead 15:16
learn 11:19
left-handed 27:21
legal 23:15,25 24:23
 25:3 27:25 28:11
letters 17:6,16
life 4:8 7:11 15:16,20
litigation 23:14
live 4:1,3 6:9 7:4,13,17
 8:16
lived 4:7,9,12 5:25 6:11
 8:22
living 6:2,25 12:1 13:8
 17:20

locate 11:9,13
location 4:13
log 8:3
long 4:7,12 5:17 7:7
 12:8,9 13:17,20 15:4
 22:15
loss 23:23,24 24:8,14
lost 8:2
lot 17:12
Louis 4:7,9 6:8,10,12
 13:6,8
Lutz 8:2 10:4,5,7 18:24,
 25 19:2 23:15,25 24:23
 25:3,8 26:4,16,21 27:6,
 11,19,25 28:10 29:16,
 17,20 30:3,5,12

**M**

made 11:9 15:20,21
make 3:24
Mark 9:2
married 5:13 9:10
matter 3:11
media 28:23
meet 13:4 14:17 17:25
meetings 13:2
members 28:20
mental 19:21,24 20:2
messages 17:15
met 13:14 14:6
met all 6:22
middle 3:14
minute 26:9
minutes 12:13 29:18,
 20
Missouri 4:2 6:8
mistaken 9:25
mistakes 15:20
moment 8:2
monetary 23:13,18
money 22:19,24 23:20,
 23 24:8,14,17 25:6
months 7:8,10 12:17
 13:19 22:18
mother 5:11,13 6:2
 7:18 8:21 10:10,11,15
mother's 7:25 8:14,17
Multiple 26:2

**N**

names 6:18
Nichols 3:8,10 8:1,6,16
 10:3,6,8 18:25 19:3
 23:19 24:2,25 25:5,9
 26:6,18,22 27:9,13,20
 28:2,16 29:13,17,21,24
 30:7,11
notes 29:15
number 3:16 5:3 10:12,
 16 17:13

**O**

Object 26:16
objection 19:1,2 23:15,
 25 24:23 25:3,8 26:21
 27:6,25 28:10
objections 27:11,19
occasion 15:2
occur 22:11
occurred 10:21 16:8
Officer 26:14 27:1,23
 28:5
officers 27:16
older 8:19,20 9:20

**P**

pain 24:17
painful 3:18 26:8
participated 4:25
participating 30:8
partner 4:17 8:22
partners 8:24
passed 12:18,21
Patrick 5:8 7:25 8:14
 11:14,17,20 16:14,16
 21:1,12
pause 8:1
pending 3:22
perfect 15:16,21
perfectly 3:20 5:6
period 12:11
periods 18:5
person 6:24 9:1 12:23
 13:1
phone 10:18 12:6
 17:15,17 18:1

ESTATE OF PATRICK HARMON, SR., et al. vs SALT LAKE CITY, et al.
TASHA LASHONDA SMITH - 11/10/2022                                3

photographs 18:8,11, 13,16
physical 18:22 19:8
pictures 23:12
place 13:12
places 14:2
planted 27:16
point 3:19
position 26:25
postcards 17:6
posted 29:5,8
prescription 20:9,12, 13
prior 6:5 11:10 14:4 16:4 17:2 23:6
prison 14:24 15:10,13
provide 22:8,19,22,25
provided 22:16
punishment 25:6
punitive 25:1,2
purpose 25:6

Q

question 5:5 8:8,10,12 12:10 19:5 25:10 28:3
questions 3:16,22 5:3 26:7 30:1

R

reach 10:16,18 16:16
reached 11:5 16:18,22
reaction 16:18
read 8:7,9
reason 15:6
recall 10:20 13:2,11,17 17:12
receive 17:6 23:8
recess 8:5 29:23
recognize 3:17
reconnect 16:24
reconnected 17:11 22:16
reconnecting 14:4 17:2
record 8:4,6,9 26:4 29:22,25
reduction 24:15
reflect 26:5

regularly 19:10
related 3:17 11:20
relationship 5:15,20 9:17,19
religion 16:7
remember 17:24 20:21, 24
renewed 16:5,11
repeat 19:5 28:3
represent 3:10
required 20:11
returns 23:5
right-handed 27:21
Rodney 6:20

S

Salt 12:2
seeking 23:14,20,23 24:5,8,11,14,17,20,25 25:6,12
sense 3:24
separate 29:9
serve 14:23
served 15:1,4
serving 15:7
Sheila 6:21 7:3
short 7:6 29:14
sibling 7:24 8:14
siblings 6:14 7:21 8:10,17 14:5,11
side 7:24,25 8:13,15,17 28:22
sister 13:23,24
Smith 3:3,9,13 9:2,3 19:3 25:15 26:5,6,23 28:23 30:1,6,7
smoke 20:5
social 28:23
sort 14:1
speak 16:10
specific 23:20 24:5,11, 20 25:12
specifically 26:1
speculation 27:7 28:11
spirituality 16:5,11
split 14:1
spoke 11:21 16:15 17:10 18:1

spoken 16:21
spouse 4:17 8:21
spouses 8:24
Sr 5:8
St 4:2,7,9 6:8,10,12 13:6,8
start 9:23 14:10 19:6
statement 15:24 16:1
statements 28:17
states 15:15 16:4
stay 13:22
stayed 13:15
stepfather 9:4,5
substance 20:18
suffering 24:18
support 24:9
surprised 12:3
Susette 8:7 26:4 30:12
suspect 19:23
suspected 20:2
sworn 3:4

T

talk 11:7 12:11
talked 12:15
talking 9:23
Tasha 3:3,13 23:17 28:12
tax 23:5
tears 26:5
testified 3:5
text 17:15
texted 17:18
thing 10:1
time 5:22 7:6 11:10,24 12:11,20 13:9,22 14:1, 12,23 15:1 16:22,25 17:10,21 18:22 19:8 21:9,20 22:22 23:3 29:19
times 12:6,25 17:10 18:2 25:24 26:2
tobacco 20:5
today 3:9,16
told 20:1 21:24
topic 26:8
topics 3:18
total 22:25

touch 10:8
travel 14:20
treated 20:17
trust 21:15
turn 30:3
Twitter 29:3
type 11:11
types 23:13

U

uncle 6:19,20 10:10,13, 14
understand 4:23 26:7
undiagnosed 19:24 20:2
Utah 12:2,3 14:20 18:3 22:3

V

videos 25:16,18
visit 13:10,17,20 14:20 15:12
visits 13:12 14:14

W

wait 8:3
waited 28:13,14
waiting 11:7
warehouse 22:2,6
watch 25:20
watched 25:15,18,25
weapon 27:2,24 28:6
week 13:16 16:15
weeks 12:16
working 22:2
write 15:17

Y

year 7:9,10 13:15 17:4 20:24
years 4:14 5:18,19 6:5 12:19,22 13:11 21:19, 23 23:6
younger 8:19