**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**April 22, 2025**

**FOR THE TENTH CIRCUIT**
_____

**Christopher M. Wolpert**
**Clerk of Court**

ESTATE OF PATRICK HARMON,
SR.; PATRICK HARMON, II, as
personal representative of the Estate
of Patrick Harmon, Sr. and heir of
Patrick Harmon, Sr.; TASHA
SMITH, as heir of Patrick Harmon,
Sr.,

     Plaintiffs - Appellants,

v.

No. 23-4125

SALT LAKE CITY, a municipality;
OFFICER CLINTON FOX, in his
individual capacity,

     Defendants - Appellees.
_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:19-CV-00553-HCN)**
_____

Cassandra Dinaro, Student Attorney, Student Law Office, University of
Denver Sturm College of Law, Civil Rights Clinic, Denver, Colorado
(Laura L. Rovner, Nicholas A. Lutz, and Miriam Kerler, and MaKenna
Zoglmann and Teagan Foti, Student Attorneys, University of Denver Sturm
College of Law; Qusair Mohamedbhai, Rathod Mohamedbhai, LLC,
Denver, Colorado; and Corey D. Riley, Deiss Law, PC, Salt Lake City,
Utah, with them on the briefs), for Plaintiffs-Appellants.

Katherine R. Nichols, Senior City Attorney, Salt Lake City Corporation,
for Defendants-Appellees.
_____

Before **MATHESON**, **BACHARACH**, and **FEDERICO**, Circuit Judges.

———————————————————————

**BACHARACH**, Circuit Judge.

———————————————————————

This appeal involves the Fourth Amendment's protection against unreasonable seizures. The reasonableness of a seizure turns on the totality of circumstances. *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985). These circumstances may include the threat posed by a suspect and the degree of force that the officer uses. *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015).

When the circumstances create an imminent threat of serious physical injury or death, an officer can ordinarily use lethal force. But how do we assess the imminence of a threat at the summary judgment stage when factfinders could reasonably disagree about the suspect's actions?

1. **Officer Fox shoots Mr. Harmon.**

The circumstances began when a police officer for Salt Lake City (Mr. Kris Smith) stopped a man, Mr. Patrick Harmon, for a traffic violation while he was riding a bicycle. Mr. Harmon gave a fake name, but Officer Smith was able to identify Mr. Harmon and found that he had an active felony warrant. Officer Smith decided to arrest Mr. Harmon.

To make the arrest, Officer Smith tried to handcuff Mr. Harmon. But Mr. Harmon broke free and ran, with Officer Smith giving chase along with two other officers (Mr. Clinton Fox and Mr. Scott Robinson). All the

officers said that they had seen Mr. Harmon reach toward his waist or a pocket.

Mr. Harmon slowed, turned sideways, and brought his hands together in front of his chest. And all of the officers later said that they had heard Mr. Harmon say something about cutting or stabbing.

Officer Fox added that he had seen Mr. Harmon holding a knife, Officer Smith said that he hadn't seen a knife, and Officer Robinson couldn't remember.

When Officer Fox was only about five to seven feet away, he shot Mr. Harmon three times. Officer Smith, who was about fifteen feet away, fired his taser. Mr. Harmon later died from the gunshots. When Mr. Harmon fell, a knife lay next to his right arm.

## 2.  **Mr. Harmon's estate sues for excessive force.**

Mr. Harmon's estate and his two children sued Officer Fox and Salt Lake City, claiming excessive force.[1] The district court dismissed the action, but we reversed. *Est. of Harmon*, *Sr. v. Salt Lake City*, No. 20-4085, 2021 WL 5232248 (10th Cir. Nov. 10, 2021) (unpublished). On remand, the district court granted summary judgment to Officer Fox and Salt Lake City, reasoning that any factfinder would have

---

[1]   The estate and children also claimed a denial of equal protection and asserted state-law claims for wrongful death and unnecessary rigor. These claims aren't at issue here.

- found that Mr. Harmon had been holding a knife and

- regarded the shooting as reasonable.

Mr. Harmon's estate and his children appeal.

### 3.   We independently consider the grant of summary judgment.

In deciding this appeal, we conduct de novo review, applying the
same standard that governed in the district court. *See Grubb v. DXP
Enters., Inc.*, 85 F.4th 959, 965 (10th Cir. 2023). Under that standard,
Officer Fox and Salt Lake City are entitled to summary judgment if they
show a right to judgment as a matter of law based on the absence of a
genuine dispute of material fact. Fed. R. Civ. P. 56(a). In determining
whether Officer Fox and the city are entitled to judgment as a matter of
law, we view the evidence and all reasonable inferences in the light most
favorable to Mr. Harmon's estate and his children. *Tolan v. Cotton*, 572
U.S. 650, 656–67 (2014).

That evidence includes video and audio recordings from the officers'
body cameras. If the events are conclusively shown in the recordings, we
rely on the recordings to determine the facts. *See Scott v. Harris*, 550 U.S.
372, 380–81 (2007). But "[i]f the recording[s] do[] not clearly depict an
action, and the evidence can reasonably be interpreted to support either
party's version of what happened," we would need to credit the version
given by the estate and children. *Baca v. Cosper*, 128 F.4th 1319, 1324
(10th Cir. 2025).

4

### 4.    For Officer Fox's assertion of qualified immunity, a genuine dispute of material fact exists.

Officer Fox asserted a defense of qualified immunity, shifting the burden to the estate and children to show that

- a constitutional violation had taken place and

- this violation had been clearly established.

*Sanchez v. Guzman*, 105 F.4th 1285, 1292 (10th Cir. 2024). A right is *clearly established* when it's "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam).

### a.    A factfinder could reasonably find a constitutional violation.

The constitutionality of the shooting turns on its reasonableness. *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015). This determination involves three factors: (1) the severity of Mr. Harmon's crime; (2) the immediacy of a threat to the officers or others; and (3) the resistance of Mr. Harmon or an effort to flee. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). (We refer to these as the *Graham* factors.)

The second factor—the immediacy of a threat to safety—is "undoubtedly the 'most important' and fact intensive." *Arnold v. City of Olathe*, 35 F.4th 778, 789 (10th Cir. 2022) (cleaned up). This factor triggers a separate test when the force is deadly, inquiring into "probable cause to believe that the[] [suspect posed] a threat of serious physical harm

to [the officer] or to others." *Tenorio v. Pitzer,* 802 F.3d 1160, 1164 (10th Cir. 2015). This inquiry is guided by four considerations: (1) "whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands;" (2) "whether any hostile motions were made with the weapon towards the officers;" (3) "the distance separating the officers and the suspect;" and (4) "the manifest intentions of the suspect." *Est. of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008). (We refer to these as the *Larsen* considerations.)

The first two *Larsen* considerations assume that an officer sees the suspect with a weapon. But we apply these considerations even when the parties disagree over whether the officer saw a weapon. *See Clerkley v. Holcomb*, 121 F.4th 1359, 1362–63 (10th Cir. 2024) (applying the four *Larsen* considerations when the officer contended that the suspect was holding "something black in his hand" and the suspect maintained that his hands were empty). So we apply the *Larsen* considerations here.

The first *Larsen* consideration is whether Officer Fox ordered Mr. Harmon to drop his weapon. *Reavis Est. of Coale v. Frost*, 967 F.3d 978, 988 (10th Cir. 2020). For this consideration, Officer Fox and the city don't contend that anyone ordered Mr. Harmon to drop the knife.

But the district court doubted that Officer Fox had enough time to tell Mr. Harmon to drop the knife. *Est. of Harmon, Sr. v. Salt Lake City*, No. 2:19-cv-553-HCN, 2023 WL 5334118, at *8 (D. Utah. Aug. 18, 2023)

6

(unpublished). The estate and children argue that Officer Fox had enough time to warn Mr. Harmon during the six seconds that elapsed during the chase.

Officer Fox and the city challenge the preservation of this argument, pointing out that in district court, Mr. Harmon's estate and children didn't rely on the six seconds that had elapsed. Appellant's App'x vol. 3, at 670. But the estate and children preserved their overarching contention on this *Larsen* consideration by contending that Officer Fox could have issued a warning:

> "As to the first *Estate of Larsen* factor, the officers never ordered Mr. Harmon to drop a weapon." *Est. of Harmon, Sr.*, 2021 WL 5232248, at *10. While Defendants argue that Officer Fox did not have time to issue an order or warning prior to opening fire on Mr. Harmon, the Tenth Circuit Court of Appeals did not credit that defense in its *de novo* review of the video evidence. *See id.* This factor unquestionably weighed in favor of Plaintiffs.

Appellant's App'x vol. 3, at 670. Through this contention in district court, the estate and the children preserved their argument that Officer Fox had enough time to issue a warning.

Because this argument was preserved, we address the merits. A factfinder could conclude, like the district court, that it was not feasible for Officer Fox to issue a warning in "rapidly evolving circumstances involving deadly threats." *Est. of Harmon, Sr. v. Salt Lake City*, No. 2:19-cv-553-HCN, 2023 WL 5334118, at *8 (D. Utah. Aug. 18, 2023) (unpublished). But a factfinder could also conclude that during the chase,

7

which took six seconds, Officer Fox had enough time to issue a warning.
So the first *Larsen* consideration favors the estate and the children. *See*
*Clerkley v. Holcomb*, 121 F.4th 1359, 1365 (10th Cir 2024) (concluding
that the first *Larsen* consideration favored the suspect because the officer
had immediately fired a weapon after shouting "show me your hands" and a
factfinder could conclude that the suspect's hands had been empty); *Pauly*
*v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017) (concluding that the first
*Larsen* consideration favored the suspect's estate and family because an
officer could have provided a warning during a five-second interval).

The second *Larsen* consideration is whether Mr. Harmon made
hostile motions with a knife. *Est. of Larsen ex rel. Sturdivan v. Murr*, 511
F.3d 1255, 1260 (10th Cir. 2008). We know that Mr. Harmon had a knife,
for it was lying on the ground close to his right arm when he collapsed
from the gunshots.[2] But did Officer Fox see Mr. Harmon brandishing a
knife?

The parties disagree in their answers. Officer Fox insists that he saw
Mr. Harmon brandish the knife near his torso area; the estate and children
deny that Mr. Harmon did anything with the knife. Though the estate and

---

[2] The estate and children speculate that someone else might have left
the knife on the ground where Mr. Harmon fell. But that speculation is
unreasonable even when we credit the estate and the children with all
reasonable inferences from the evidence. *See* Part 3, above.

children weren't present at the scene, we "should be cautious on summary judgment to 'ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify.'" *Pauly v. White*, 874 F.3d 1197, 1217–18 (10th Cir. 2017) (quoting *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999)).

With this caution, we conclude that a reasonable factfinder could have credited the version embraced by the estate and children, for "there was no knife visible in the video." *Est. of Harmon, Sr. v. Salt Lake City*, No. 20-4085, 2021 WL 5232248 (10th Cir. 2021) (unpublished). Though the video doesn't reflect a knife, Officers Fox and Smith testified about what they had seen. Both officers testified that they had been looking near Mr. Harmon's torso area. With this focus, Officer Fox testified that he had seen Mr. Harmon hold the knife near his chest area when they were about five to seven feet away. Officer Smith was about fifteen feet away, but he testified that he hadn't seen a knife while looking at the same part of Mr. Harmon's body:

> Q.    Did you see anything in Mr. Harmon's hands?
>
> A.    No.
>
>        . . . .
>
> Q.    . . . And at no point in the interaction up to this time did you observe anything in Mr. Harmon's hands?

A.   I did not.

. . . .

Q.   . . . Did you believe that Mr. Harmon was armed at the time you fired your taser?

A.   I did not.

. . . .

Q.   . . . What did you think when you heard the shots from Mr. Fox?

A.   Truthfully? What the f***.

Q.   What made you think that?

A.   Because what I perceived was different than what [Officer Fox] saw and in my head I had not seen a knife or any other reason, so I was trying to figure out exactly what he saw and why he felt it was appropriate to fire his pistol.

Q.   At that time did you think that deadly force was necessary?

A.   If I was basing it solely off of what I could see at that time, no.

Appellants' App'x vol. 6, at 1119.

The videos reflect similar viewpoints for Officers Smith and Fox. For example, this is what Officer Smith saw from roughly fifteen feet away:



Appellant's App'x vol. 7, at 557. And this is what Officer Fox saw from roughly five to seven feet away:



Appellant's App'x vol. 2, at 489.

In addition to Officer Smith's testimony and the absence of a knife in the videos, the estate and children point to two other pieces of evidence suggesting that Mr. Harmon hadn't brandished a knife:

1.    The police conducted DNA tests on the knife, which lay next to Mr. Harmon's right arm, and the results were inconclusive.

2.    Officer Fox didn't warn the other officers about a knife or mention it right after the shooting.

Granted, Officer Fox and Salt Lake City presented contrary evidence, including the chaotic nature of the chase, with Mr. Harmon changing direction and the officers looking at different parts of Mr. Harmon's body. For example, Officer Fox said that he was watching Mr. Harmon's hands; Officer Smith said that he was looking at Mr. Harmon's torso area in order to shoot him with a taser.

But these circumstances wouldn't prevent a reasonable factfinder from crediting the version presented by the estate and children. After all, the chaotic events affected Officer Fox as well as Officer Smith. And even though Officer Smith was looking at Mr. Harmon's torso area, Mr. Harmon's right hand was in front of that area when Officer Fox says that he saw the knife. So both officers had a similar view of Mr. Harmon's hands right before Officer Fox fired.

Downplaying the videos and Officer Smith's account, Officer Fox and the city rely on

- *Estate of Valverde by & through Padilla v. Dodge*, 967 F.3d 1049, 1065 (10th Cir. 2020) and

- *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1263 n.4 (10th Cir. 2008).

In these cases, multiple officers saw the suspect wielding a weapon. *Valverde*, 967 F.3d at 1065; *Larsen*, 511 F.3d at 1263 n.4. In *Valverde*,

12

other officers didn't see a weapon; but these officers had a different view of the suspect. 967 F.3d at 1065.

These opinions don't apply here. Only one officer saw Mr. Harmon brandishing a knife even though Officer Smith had a similar view, and none of the video recordings show a knife in Mr. Harmon's hand. Given the video recordings and different accounts, a reasonable factfinder could find that Mr. Harmon hadn't brandished a knife.

Officer Fox and the city point out that a knife was ultimately found near Mr. Harmon's right arm when he crashed to the ground. Given the nearby knife, a reasonable factfinder would surely have found that Mr. Harmon had the knife when he was running. *See* p. 8 n.2, above. But was the knife in his pocket, or was he brandishing it? The difference matters because there's "a fundamental distinction between mere *possession* of a weapon and *hostile movements* with it." *Rosales v. Bradshaw*, 72 F.4th 1145, 1153 (10th Cir. 2023) (quoting *St. George v. City of Lakewood*, No. 20-1259, 2021 WL 3700918, at *7 (10th Cir. Aug. 20, 2021) (unpublished) (emphasis in original)). Though Mr. Harmon unquestionably possessed the knife, a genuine dispute of material fact exists over whether he had made hostile movements with it.

Officer Fox and the city point out that the three officers saw Mr. Harmon moving his hands toward either his waist or his pocket. These accounts are supported by the video recordings.

13

But was that movement *hostile*? Perhaps if the officers knew that Mr. Harmon had a knife in his pocket. But how would they have known that?

Officer Fox and the city answer that the officers would have known because the officers had heard Mr. Harmon state that he was going to cut or stab. But this statement can't be heard on any of the video recordings even though other sounds are audible (like Officer Fox yelling "I'll f***ing shoot you" and noises from Officer Smith's radio). *See Est. of Harmon, Sr. v. Salt Lake City*, No. 20-4085, 2021 WL 5232248, at *4 (10th Cir. Nov. 10, 2021) (unpublished) (stating that "no verbal threats made by Mr. Harmon can be heard on the video"). Moreover, we've held that even when a video recording lacks audio, we must credit the claimant's version if the parties disagree about what a suspect had said. *Est. of Booker v. Gomez*, 745 F.3d 405, 412 n.3 (10th Cir. 2014).

Granted, a factfinder might have credited the account by Officer Fox and the city despite the lack of corroboration in the recordings. For example the recordings pick up Mr. Harmon's voice before the chase, and Mr. Harmon allegedly referred to stabbing or cutting while everyone was running. In addition, the officers were wearing microphones; Mr. Harmon wasn't. So valid reasons exist for a factfinder to credit the officers' accounts about Mr. Harmon's threats to stab or cut.

14

But we must view the evidence and reasonable inferences favorably to the estate and children. *See* Part 3, above. When viewing the evidence and reasonable inferences favorably to the estate and children, a factfinder could legitimately disbelieve the officers' testimony about hearing threats of stabbing or cutting. *See Pauly v. White*, 874 F.3d 1197, 1218 (10th Cir. 2017) (observing that the court "must . . . look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story"). So a reasonable factfinder could question the account of Officer Fox and the city based on what's missing from the recordings.

Officer Fox also argues that even if he had been wrong, he still might have reasonably believed that Mr. Harmon was making hostile motions with a knife. But this argument assumes that a factfinder would need to regard Officer Fox's mistaken belief as reasonable. The reasonableness of a mistake would entail a question of fact rather than a matter for the court to decide as a matter of law. *See Clerkley v. Holcomb*, 121 F.4th 1359, 1364 (10th Cir. 2024).

In resolving this factual dispute, the jury could question the reasonableness of Officer Fox's mistake based on Officer Smith's account. After all, Officer Smith had a clear view of Mr. Harmon's torso from roughly fifteen feet away and hadn't seen Mr. Harmon making hostile motions with a knife. Because the jury could regard a factual mistake as unreasonable, the mistake wouldn't entitle Officer Fox to summary

judgment. *See id.* (concluding that the reasonableness of an officer's mistaken perception involved a question of fact preventing summary judgment for the officer).

The third *Larsen* consideration involves the distance between the officers and the suspect. The district court concluded that Officer Fox had been only five to seven feet from Mr. Harmon, creating a "menacing and imminent threat to the officers' safety." *Est. of Harmon, Sr. v. Salt Lake City*, No. 2:19-cv-553-HCN, 2023 WL 5334118, at *9 (D. Utah. Aug. 18, 2023) (unpublished).

The proximity doesn't necessarily compel a factfinder to regard a threat as imminent. We recently addressed a similar issue in *Baca v. Cosper*, 128 F.4th 1319 (10th Cir. 2025). There the officer was six feet away from the suspect, who was walking toward the officer while wielding two knives. *Id.* at 1324. We held that even then, a reasonable factfinder could find that the suspect hadn't posed an imminent threat to the officer. *Id.* at 1328–29; *see* p. 20 n.4, below. Under *Baca*, the five-to-seven-foot distance between Mr. Harmon and Officer Fox didn't necessarily create an imminent threat.

Addressing the fourth *Larsen* consideration, the district court concluded that the suspect's manifest intentions support the existence of an immediate threat. *Est. of Harmon, Sr. v. Salt Lake City*, No. 2:19-cv-553-HCN, 2023 WL 5334118, at *9 (D. Utah. Aug. 18, 2023) (unpublished).

16

For this conclusion, the court reasoned that Mr. Harmon had turned toward

the officers while brandishing a knife and threatening to stab or cut them.

*Id.* at *9. But if Officer Fox hadn't seen a knife or heard a threat, the

factfinder could reasonably doubt the imminence of a threat from

Mr. Harmon's turn to his side.

Applying the four *Larsen* considerations, a factfinder could

reasonably find that

- Mr. Harmon hadn't brandished a knife or threatened to stab or cut anyone and

- Officer Fox hadn't ordered Mr. Harmon to drop the knife (if he was holding it).

Officer Fox and the city counter with arguments on the two other

*Graham* factors:

1. The crime was serious because Officer Fox knew that Mr. Harmon had an outstanding warrant for a felony.

2. Mr. Harmon was fleeing to avoid arrest.

*See Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

Challenging the defendants' reliance on the first *Graham* factor, the

estate and children question whether Officer Fox knew about the felony

warrant. Officer Fox acknowledged that he hadn't known the specifics

about the warrant, but stated under oath that he had known that the crime

was a felony because the jail was accepting bookings only for felony

warrants. For the sake of argument, we can assume that the estate and

17

children failed to create a genuine dispute of material fact over Officer
Fox's awareness that the warrant involved a felony. With this assumption,
the first *Graham* factor would support Officer Fox's decision to use force.[3]
And the third *Graham* factor supports the reasonableness of the force
because Mr. Harmon was admittedly fleeing to avoid an arrest.

Two *Graham* factors thus support the reasonableness of force: (1) the
severity of the crime and (2) Mr. Harmon's attempt to flee in order to
avoid arrest. But when the disputed evidence is viewed in the light most
favorable to Mr. Harmon's estate and children, the remaining factor—the
immediacy of a threat to officer safety—would suggest that the deadly
force was unreasonable. And this factor is the most important of the three.
*See Pauly v. White*, 874 F.3d 1197, 1215–16 (10th Cir. 2017). Given this
*Graham* factor, we consider the constitutionality of the shooting if
Mr. Harmon hadn't posed an immediate threat to anyone. Without such a
threat, the shooting would have violated the Constitution. *See Clerkley v.
Holcomb*, 121 F.4th 1359, 1365 (10th Cir. 2024) (stating that if a suspect
"posed no threat . . . and . . . a reasonable officer would have recognized as
much," this fact would be "dispositive of a Fourth Amendment violation

---

[3]   In district court, the estate and children admitted that the severity of
the offense had supported the use of some force, but argued that the use of
deadly force had been disproportionate to the need. *See* Appellants' App'x
vol. 8, at 1563 (plaintiffs' counsel conceding that this factor supports the
use of force while noting that the disagreement involves "a matter of
degree and proportionality").

. . . because deadly force is constitutional only 'if a reasonable officer . . . would have had probable cause to believe that there was a threat of serious physical harm to themselves or others'" (quoting *Zia Trust Co. v. Montoya*, 597 F.3d 1150, 1154 (10th Cir. 2010))); *Tenorio v. Pitzer*, 802 F.3d 1160, 1164–1166 (10th Cir. 2015) (concluding that a jury could find that an officer's use of lethal force had been unreasonable when the suspect was holding a knife at his side but hadn't taken "hostile or provocative action toward the officers"). So at the stage of summary judgment, the estate and children have shown a constitutional violation.

### b.    A constitutional violation would have been clearly established.

For the claim against Officer Fox, a constitutional violation would have been clearly established. *See Sanchez v. Guzman*, 105 F.4th 1285, 1292 (10th Cir. 2024). In challenging the clarity of a violation, Officer Fox points to factual differences in the cases and the possibility of a reasonable mistake.

In the prior appeal, we considered the clarity of a constitutional violation at the motion-to-dismiss stage. At that stage, we observed that "[t]here have been numerous cases in this circuit involving an officer shooting of an unarmed (or knife-wielding) person." *Est. of Harmon, Sr. v. Salt Lake City*, No. 20-4085, 2021 WL 5232248, at *5 (10th Cir. Nov. 10, 2021) (unpublished). We concluded that those cases had established a

constitutional violation "where an officer had reason to believe that a
suspect was only holding a knife, not a gun, and the suspect was not
charging the officer and had made no slicing or stabbing motions toward
him." *Id.* (quoting *Walker v. City of Orem*, 451 F.3d 1139, 1160 (10th Cir.
2006) (citing *Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 735–36
(10th Cir. 1993))).

We also addressed the potential threat from Mr. Harmon's sideward
turn, suggesting that he might try to approach Officer Fox. We pointed out
that we had held in *Tenorio v. Pitzer* that a factfinder could reasonably
view a shooting as unreasonable even when a suspect had wielded a knife
and taken three steps toward the officers. 802 F.3d 1160, 1164–1166 (10th
Cir. 2015).[4]

We concluded that if Mr. Harmon hadn't brandished a knife or
threatened to cut or stab the officers, the shooting would have violated a
clearly established constitutional right. *Id.* That conclusion is equally

---

[4]     As noted above, our opinion in *Baca v. Cooper* relied on *Tenorio* to
characterize a constitutional violation as clearly established when a suspect
carrying two knives had taken two steps to come within six feet of an
officer. *Baca v. Cosper*, 128 F.4th 1319, 1328–29 (10th Cir. 2025); *see*
p. 16, above. Though Officer Fox wouldn't have had the benefit of our
opinion in *Baca*, it provides guidance on the applicability of *Tenorio* when
a police officer shoots a suspect who isn't making stabbing or cutting
motions with a knife. *See Clerkley v. Holcomb*, 121 F.4th 1359, 1366 (10th
Cir. 2024) (stating that opinions issued after an incident can bear on
qualified immunity by providing guidance on the historical state of the
law).

fitting here: If Mr. Harmon hadn't brandished a knife or threatened the officers, the shooting would have violated a clearly established constitutional right.

Officer Fox and Salt Lake City argue that factual differences exist between this case and three others (*Tenorio v. Pitzer*, 802 F.3d 1160 (10th Cir. 2015), *Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006), and *Zuchel v. City and County of Denver*, 997 F.2d 730 (10th Cir. 1993)). But before this incident, we had held that it wasn't reasonable for an officer to use deadly force when a suspect was wielding a knife but not making any "slicing or stabbing motions toward [the officer]." *Walker*, 451 F.3d at 1160. Given our prior focus on the absence of slicing or stabbing motions, the factual distinctions between the cases don't undermine the clarity of a constitutional violation under the plaintiffs' version of events. *See Clerkley v. Holcomb*, 121 F.4th 1359, 1366 (10th Cir. 2024) (rejecting the defendant's reliance on factual distinctions with prior cases because their "unit[ing]" characteristic had involved recognition of the constitutional prohibition against shooting someone who was "unarmed and nonthreatening").

\* \* \*

A factfinder could legitimately determine that

- Officer Fox had shot Mr. Harmon despite the absence of an imminent threat and

21

- a mistaken perception of a threat would have been unreasonable.

Given the reasonableness of these potential findings, the district court should have denied qualified immunity to Officer Fox.

**5.    The existence of a constitutional violation requires reconsideration of the city's liability.**

The estate and children sued not only Officer Fox, but also Salt Lake City. The district court granted summary judgment to the city, reasoning that it couldn't incur liability in the absence of an underlying constitutional violation by Officer Fox. But we have elsewhere concluded that a reasonable factfinder could find a constitutional violation by Officer Fox. The district court should thus revisit the city's argument for summary judgment.

Reversed and remanded for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

April 22, 2025

Maya Cemper-Walker
Cassandra Dinaro
Nicole Brianne Godfrey
Miriam Kerler
Nicholas A. Lutz
Laura Rovner
University of Denver
Sturm College of Law
2255 East Evans Avenue
Denver, CO 80210

Qusair Mohamedbhai
Rathod Mohamedbhai
2701 Lawrence Street, Suite 100
Denver, CO 80205

Corey D. Riley
Deiss Law
10 West 100 South, Suite 700
Salt Lake City, UT 84101

RE:    **23-4125, Estate of Patrick Harmon, Sr., et al v. Salt Lake City, et al**
Dist/Ag docket: 2:19-CV-00553-HCN

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(d)(1), any petition for rehearing must be filed within 14
days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length,
and no answer is permitted unless the court enters an order requiring a response. *See* Fed.

R. App. P. Rule 40 and 10th Cir. R. 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

                              Sincerely,

                              Christopher M. Wolpert
                              Clerk of Court


cc:       Katherine Nichols



CMW/sls

2